The UNITED STATES of America,
Plaintiff,

v.

Deral Gene HOLMAN et al., Defendants.

Crim. No. MCR 80–00216.

United States District Court,
N. D. Florida,
Panama City Division.

April 14, 1981.

Michael T. Simpson, Tallahassee, Fla., for plaintiff.

Samuel T. Adams, Apalachicola, Fla., John D. O'Brien, Panama City, Fla., James K. Jenkins, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

HATCHETT, Circuit Judge, sitting by designation.

This cause is before the court on a motion to dismiss the indictment. The two-count indictment charges defendants with conspiracy to possess with intent to distribute marijuana (21 U.S.C. §§ 841(a)(1), 846) and possession with intent to distribute marijuana (21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2). Defendants allege that the grand jury selection process in the Northern District of Florida, as it applies to the selection of grand jury forepersons, is conducted in a racially and sexually discriminatory fashion in violation of the fifth and sixth amendments to the United States Constitution, and the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1875. Evidence in the form of testimony, depositions, and affidavits was offered by the parties.

## I. SIXTH AMENDMENT CHALLENGE

The sixth amendment insures all defendants in criminal cases a "speedy and public trial, by an impartial jury." U.S. Const. amend. VI. "The requirement of an impartial grand jury has been interpreted to mean a jury composed of members drawn from a fair cross-section of the community." *United States v. Jenison*, 485 F.Supp. 655, 660 (S.D.Fla.1979); *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). To prove that a sixth amendment violation has occurred in the context of grand jury foreperson selection, the defendants must show:

(1) [T]hat the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group [in the office of grand jury person] ... is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to the systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364, 99 S.Ct. at 668. Because the " 'focus [is] on the issue of a fair cross section and not on the issue of discrimination,' [in sixth amendment challenges,] a defendant is not required to show

bad faith and a prima facie showing of systematic exclusion may not be rebutted by proof of non-discriminatory intent." *Jenison*, at 660, *quoting, United States v. Armsbury*, 408 F.Supp. 1130, 1140 (D.Or. 1976). It is also irrelevant that the discrimination, if any, was unintentional. *Jenison*. Once the defendants have made a prima facie showing of substantial underrepresentation, the state may only rebut the prima facie case by showing that a significant state interest is advanced by the procedure which results in the exclusion. *Duren v. Missouri.*

## II. FIFTH AMENDMENT CHALLENGE

■ The equal protection clause of the fourteenth amendment to the United States Constitution prohibits the intentional exclusion of cognizable classes from the office of grand jury foreperson. *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). To show that an equal protection violation has occurred in the context of grand jury foreperson selection, the defendant must:

> [E]stablish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or applied .... Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as [foreman] ..., over a significant period of time .... This method of proof, sometimes called the "rule of exclusion," has been held to be available as a method of proving discrimination in jury selection against a delineated class .... Finally, ... a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing .... Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the state to rebut that case.

*Castaneda*, 430 U.S. at 494–95, 97 S.Ct. at 1280 (citations omitted) (footnotes omitted). Under the test outlined in *Castaneda*, the defendants must first identify a cognizable class. Secondly, they must show a significant underrepresentation of that class, and finally, demonstrate by evidence that the selection procedure is susceptible to abuse. The final part of the *Castaneda* test allows the state to rebut plaintiff's prima facie case of discriminatory intent by introducing evidence that the discrimination, if any, was unintentional.

■ While the test outlined in *Castaneda* sought to control challenges based upon the equal protection clause of the fourteenth amendment, the same analysis is applicable to the due process clause of the fifth amendment. *United States v. Gordon-Nikkar*, 518 F.2d 972 (5th Cir. 1975). "If a classification is invalid under the Equal Protection Clause of the Fourteenth Amendment, it is also invalid under the Due Process Clause of the Fifth Amendment." *Id.*, at 976.

## III. STANDING

■ The government argues initially that the defendants, white males, do not have standing to assert claims of race and sex discrimination in the office of grand jury foreperson. The government's argument is without merit. Standing to challenge exclusion resulting in a violation of the fifth and sixth amendments exists regardless of whether the defendant is a member of the excluded class. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); *Jenison.*

## IV. PRIMA FACIE CASES UNDER THE FIFTH AND SIXTH AMENDMENTS

■ The first prongs of a prima facie case under the fifth and sixth amendments are similar. Both require a showing that the group alleged to have been systematically excluded is one that "is a recognizable, distinct class, singled out for different treatment under the laws, as written or as

applied." *Castaneda*, 430 U.S. at 494, 97 S.Ct. at 1280. Defendants allege here that blacks and women have been systematically excluded. Blacks are members of a group recognizable as a distinct class often singled out for different treatment under the laws. *Castaneda; Hernandez v. Texas*, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). Likewise, women are "sufficiently numerous and distinct" so as to be singled out for different treatment under the laws. *Duren*, 439 U.S. at 364, 99 S.Ct. at 668, quoting, *Taylor v. Louisiana*, 419 U.S. at 531, 95 S.Ct. at 698. The first prongs of the prima facie case under the fifth and sixth amendments have been shown.

## V. SUSCEPTIBILITY OF PROCEDURE AS TOOL OF DISCRIMINATION

■ Grand jury forepersons are selected by the district judge impaneling the grand jury. Before observing the persons to serve on the grand jury, the judge reviews juror qualification questionnaire forms to determine which juror is best suited to serve as grand jury foreperson. These forms contain information regarding the race and sex of the jurors. Consequently, this procedure is susceptible of discrimination since the district judge knows the race and sex of the grand jurors prior to selecting the grand jury foreperson.

## VI. UNDERREPRESENTATION OVER A SIGNIFICANT PERIOD OF TIME

■ The degree of underrepresentation of qualified members of distinct classes "is determined by comparing the proportion of the group in the total population to the proportion selected to serve as forepersons over a significant period of time." *Jenison*, at 663; *Rose v. Mitchell; Castaneda v. Partida*. Thus, the court must consider the "disparity between the ratio of [group members] . . . chosen to be foremen to the total number of foremen, and the ratio of [group members] . . . to the total population." *Rose v. Mitchell*, 443 U.S. at 571, 99 S.Ct. at 3008. The Supreme Court has "never announced mathematical standards for the demonstration of [underrepresentation or] systematic exclusion" of cognizable classes. *Alexander v. Louisiana*, 405 U.S. 625, 630, 92 S.Ct. 1221, 1225, 31 L.Ed.2d 536 (1972). "Nevertheless, some guidance as to the disparities necessary to raise a prima facie case can be gleaned from Supreme Court precedent." *United States ex rel. Barksdale v. Blackburn*, 639 F.2d 1115, 1122 (5th Cir. 1981). In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court concluded that purposeful discrimination based on race alone could not be "satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%." *Swain*, at 208–09, 85 S.Ct. at 829. In other cases, however, the Supreme Court has found prima facie cases when disparities were shown of 23%, *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); 33%, *Carter v. Jury Commission*, 396 U.S. 320 (1970); 25.7%, *Jones v. Georgia*, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967); and 33.5%, *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). With the above cases in mind, I address the statistics introduced by the defense to prove a prima facie case of underrepresentation and discriminatory intent.

Eleven grand juries were impaneled between January, 1969, and December, 1979.[1] Eleven grand jury forepersons were selected during this period.[2] Of the eleven forepersons selected, eleven or 100% were white and zero or 0% were black. Ten or 90.9% were male and one or 9.1% was female.

1. I find and the parties have agreed to a relevant period beginning January 1, 1969, because the Jury Selection Plan for the Northern District of Florida was adopted on September 13, 1968, pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1865.

2. While the court finds the relevant period to begin in 1969, the statistics for 1960 through 1968 show a blatant and clear picture of exclusion of blacks and women from the office of grand jury foreperson. Although all evidence from 1969 must be considered, we reject the defendants' argument that the pattern prior to 1974 is so great as to color all grand jury selections after that date.

According to the 1970 census, whites comprise 75.5% and blacks comprise 24.5% of the population in the Northern District of Florida. Men comprise 49% and women comprise 51% of the population in the Northern District of Florida. These figures indicate a 24.5% absolute disparity among blacks selected to serve as grand jury foreperson and blacks in the total population in the Northern District of Florida. A 41.9% absolute disparity exists between women in the total population and those selected to serve as grand jury forepersons. No comparative disparity can be calculated between blacks selected to serve as grand jury forepersons and blacks in the total population. A 17.8% comparative disparity exists between women selected to serve as grand jury forepersons and women in the total population.

The defendants' statistics and the other evidence establishes a prima facie showing of substantial underrepresentation under the sixth amendment and discrimination under the fifth amendment.

## VII. REBUTTAL OF THE PRIMA FACIE CASE

### A. Sixth Amendment Challenge

■ Once a prima facie case of substantial underrepresentation is shown, the burden of proof shifts to the state to rebut the presumption of unconstitutional underrepresentation. The prima facie case is rebutted by showing that a significant state interest is manifestly advanced by those aspects of the selection process that result in the exclusion. *Duren v. Missouri.* Nondiscriminatory intent is irrelevant in a fair cross-section challenge under the sixth amendment.

■ The government has carried its burden of showing a significant state interest. A district judge testified that the office of grand jury foreperson carries with it administrative and leadership responsibilities. He stated that the foreperson is au-

thorized to excuse jurors for various reasons and presides over the grand jury. He further testified that the grand jury foreperson should possess sufficient intellectual skills so that he can not "be easily led by the United States Attorney." The district judge concluded that the grand jury foreperson "should be one of the more intelligent settled individuals on the panel." To this end, the district judge appointed the best qualified person, using as criteria for his appointment, the age, occupation, and educational attainment of the grand juror.

This court finds that the government's interest in selecting the best qualified person to the office of grand jury foreperson is manifestly advanced by the criteria employed by the district court in selecting grand jury forepersons. The criteria employed will insure that the foreperson possesses the requisite skills to dispense with the duties of foreperson.[3]

### B. Fifth Amendment Challenge

■ "Intentional racial discrimination is the foundation" of a fifth amendment claim of jury discrimination. *United States ex rel. Barksdale v. Blackburn*, 639 F.2d 1115, 1121 (5th Cir. 1981). Thus, in order for defendants to prevail on their fifth amendment claim, they must prove that during a significant period of time cognizable classes were substantially underrepresented in the office of grand jury foreperson. *Rose v. Mitchell.* Once this prima facie showing has been made, "the burden of proof shifts to the state to rebut the presumption of unconstitutional action." *Washington v. Davis*, 426 U.S. 229, 241, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976). The government may rebut the presumption of unconstitutional action by presenting sufficient evidence showing an absence of discriminatory intent.

The defendants have made a prima facie showing of discrimination. The court finds, however, that the government has offered sufficient evidence to prove an absence of

---

**3.** Although the court approves the criteria now being used, this criteria over a relevant period of time must result in a fair cross-section of the community in the office of grand jury foreperson, or be subject to attack on constitutional grounds.

 

discriminatory intent. Both district judges testified that their selections of grand jury forepersons were not made because of race or sex. One judge testified that he viewed his duties in selecting a grand jury foreperson to be "racially and sexually neutral and racially and sexually blind." He further stated, "I did not even know that the race of the individual was on [the juror qualification questionnaire]." The evidence is sufficient to rebut a presumption of discriminatory intent.

## CONCLUSION

For the above reasons, defendant's motion to dismiss the indictment is denied.