**UNITED STATES of America**

v.

**William Howard CROSS, Sr., et al.**

**Cr. No. 80–1016–COL.**

United States District Court,
M. D. Georgia,
Columbus Division.

June 18, 1981.

---

James M. Deichert, Sp. Atty., Organized Crime and Racketeering Section, U. S. Dept. of Justice, Atlanta, Ga., for United States.

John C. Swearingen, Columbus, Ga., for defendant.

## OPINION AND ORDER

ELLIOTT, District Judge.

William Howard Cross, Sr., one of the defendants named in the indictment above referred to, moves the court to dismiss the indictment against him on the grounds that (1) the procedures by which grand jurors and petit jurors have been selected in this District since 1973 do not assure grand and

petit jury panels selected at random from a fair cross-section of the community as required by the Sixth Amendment of the Constitution and the Jury Selection and Service Act of 1968, as amended, 28 U.S.C.A. § 1861, et seq.; and (2) that black citizens and women have been discriminated against in the selection of grand jury foremen in violation of the Fifth Amendment. Defendant Cross further moves for the recusal of this United States District Judge, the Chief Judge of this District, Wilbur D. Owens, Jr., and recently retired Senior Judge William A. Bootle on the ground that all three of these judges have appointed one or more grand jury foremen during the period in question and therefore will, by necessity, be called as witnesses in any hearing regarding defendant's claim of discrimination in the appointment of grand jury foremen. This opinion constitutes the court's ruling on the motion to dismiss based on the claim of discrimination in appointment of grand jury foremen and on the motion to recuse.[1]

### The Motion to Dismiss Indictment

An initial and controlling question with regard to defendant's claim that blacks and women have been discriminated against in the selection of grand jury foremen is whether the position of a federal grand jury foreman possesses any constitutional significance so that the appointment by a federal district judge of only white males to the position of grand jury foreman can be challenged by this defendant on constitutional grounds, and the court has carefully considered the case law on the issue of disqualification of judges and has not found any basis on which this judge would be disqualified from ruling on this initial question[2] of whether the position of foreman is of constitutional significance. Furthermore, it is the court's duty to rule in the first instance on the sufficiency of the grounds asserted in defendant's motion for recusal. *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, at 1021 (5 Cir. 1981).

After careful analysis it is the court's opinion that the position of grand jury foreman or deputy foreman[3] does not possess constitutional significance and therefore the failure to appoint any blacks or women to that position cannot be challenged on constitutional grounds. The grand jury foreman exercises only minor administrative duties in the conduct of grand jury proceedings. Rule 6(c) of the Federal Rules of Criminal Procedure provides in pertinent part:

> "The foreman shall have power to administer oaths and affirmations and shall sign all indictments. He or another juror designated by him shall keep a record of the number of jurors concurring in the finding of every indictment and shall file the record with the clerk of the court, but the record shall not be made public except on order of the court. During the absence of the foreman, the deputy foreman shall act as foreman."

It is unreasonable to assume that a grand jury foreman having only the administra-

---

1. The defendant's claim with regard to composition of grand and petit jury panels will be dealt with in a separate opinion.

2. Under either of the disqualification statutes, 28 U.S.C.A. §§ 144 and 455, any possible prejudice or bias on the part of the judge sufficient to require his disqualification must be personal and must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case or related or similar cases. *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, at 1020 (5 Cir. 1981). Any action taken by this judge with regard to the impanelling of grand juries or appointments of foremen or deputy foremen would have necessarily been actions within his judicial duties.

The records show that this judge has impanelled only one of the fifteen grand juries which have been impanelled in this district since 1973 and has appointed only one foreman and one deputy foreman.

3. Although defendant does not appear to attack the appointments to the position of deputy foreman during the period in question (possibly because blacks and women have been appointed deputy foremen), this position is relevant to the court's present discussion, particularly since the deputy foreman assumes the responsibilities of the foreman in his absence, thus the court's ruling on the constitutional significance of the position of grand jury foreman applies equally to that of deputy foreman.

tive duties above described has some special influence over from 15 to 22 other individual grand jurors. The position is certainly not comparable to that of a chairman of a committee or a chairman of a board of directors who might guide a decision-making process.[4]

It is, of course, well established that the Sixth Amendment right to trial by an impartial jury includes the right to be indicted by a grand jury composed of members drawn from a source representing a fair cross-section of the community, *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); and the Jury Selection and Service Act of 1968, 28 U.S.C.A. §§ 1861–1870, was enacted by Congress to effectuate this constitutional right. In order to achieve the cross-sectional objective the Act provides comprehensive and detailed judicial machinery for the selection of federal grand jurors designed to insure that the jury venire will be drawn from a cross-section of the community. In sharp contrast with this detailed legislative scheme for the selection of a grand jury chosen from a fair cross-section of the community as required by the Sixth Amendment, there is only one provision in the United States Code applicable to the appointment of grand jury foremen and deputy foremen, to-wit:

"The court shall appoint one of the jurors to be foreman and another to be deputy foreman."

Rule 6(c), Federal Rules of Criminal Procedure. No standards are provided to govern the district judge's selection of the foreman and deputy foreman. The Congress has simply left the appointment of these positions to the sole discretion of the district judge.[5] It is reasonable to assume that had Congress perceived the appointment of the grand jury foreman to be of constitutional significance it would have provided in Rule 6 some standards or procedures to govern the district judge's appointments to these positions.

The precise question of whether the position of grand jury foreman has constitutional significance has not been decided by any appellate court. The only case directly holding that constitutional significance attaches to the position of federal grand jury foreman is a district court opinion, *United States v. Jenison*, 485 F.Supp. 655, 661 (S.D. Fla.1979) (Circuit Judge Hatchett, sitting by designation). That holding was premised on the view that in the case of *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), the Supreme Court, although reversing the Sixth Circuit Court of Appeals, "had no disagreement with the Sixth Circuit's conclusion that 'proof of discrimination in the selection of a grand jury foreman mandates the same remedy as does proof of discrimination in the selection of the grand jury.'" *Jenison*, at 661.[6]

It is my opinion that the *Jenison* court's reliance on *Rose v. Mitchell* in holding that constitutional significance attaches to the position of federal grand jury foreman is misplaced for several significant reasons. First of all, as Judge Keady recognized in *United States v. Alexander, et al.*, Cr. No. 79–09 N (N.D.Ga. March 19, 1981) (at footnote 25), since the Sixth Circuit Court's decision in *Rose* finding a constitutional violation was reversed on appeal that decision has little, if any, precedential value, especially in a case involving the position of *federal* grand jury foreman. Second, the Supreme Court in *Rose v. Mitchell*, in dic-

---

4. It is important to remember that while there is a right to a constitutionally and statutorily composed grand jury box, there is no constitutional right to a grand jury panel of a particular composition. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

5. It may be logically presumed that the district judge in his discretion will appoint as foreman the grand juror who because of his age, experience, education, employment, etc., appears to be the best qualified to carry out the duties of foreman whether that person be white, black, male or female. See *United States v. Jenison*, 485 F.Supp. 655, at 666 (S.D.Fla.1979).

6. A good brief discussion of the *Jenison* decision appears in *United States v. Alexander, et al.*, Cr. No. 79–09 N (N.D.Ga. March 19, 1981) (J. Keady, sitting by designation), at footnote 25.

tum, merely *assumed* for purposes of that case that the position of a state grand jury foreman under the Tennessee grand jury system at issue in that case had some constitutional significance. The Court stated:

> "In view of the disposition of this case on the merits, we may assume without deciding that discrimination with regard to the selection of only the foreman requires that a subsequent conviction be set aside, just as if the discrimination proved had tainted the selection of the entire grand jury venire. See *Carter v. Jury Comm'n*, 396 U.S. 320, 338, 90 S.Ct. 518 [528], 24 L.Ed.2d 549 (1970)."
>
> *Rose v. Mitchell*, 443 U.S. at 552, note 4, 99 S.Ct. at 2998 n. 4, 61 L.Ed.2d, at 747, note 4.[7]

The court found it unnecessary to address the issue in light of the defendant's failure to establish a prima facie case of discrimination. Thus, while, as the *Jenison* court emphasized, the Supreme Court in *Rose* did not express disagreement with the Sixth Circuit's conclusion that "proof of discrimination in the selection of a grand jury foreman mandates the same remedy as does proof of discrimination in the selection of the grand jury", it also did not agree with or otherwise comment upon that conclusion. The Supreme Court clearly left the issue open with respect to the position of grand jury foreman under the Tennessee grand jury system and especially with respect to the position of federal grand jury foreman.

The third reason why this court believes the *Jenison* court's reliance on *Rose v. Mitchell* to be misplaced is that the subject of the Supreme Court's inquiry there was the position of a grand jury foreman under Tennessee's grand jury system. That position was different in significant respects from that of a federal grand jury foreman under Rule 6(c) of the Federal Rules of Criminal Procedure. The Tennessee grand jury system at issue in *Rose* permitted the foreman to be "hand picked" by the Superior Court Judge *from the public at large* and not from the veniremen chosen at random as were the other members of the grand jury. There obviously is an important difference between a state judge selecting the grand jury foreman of his choice from the public at large and a federal district court judge selecting a foreman from among a constitutionally and statutorily composed grand jury of 23 members.

There are other significant differences. The Tennessee grand jury foremen were appointed for a term of two years and were often reappointed for additional terms. Of the three grand jury foremen who testified in the district court hearing one had served as foreman for five or six years (three consecutive grand juries) and two or three additional sessions. The second foreman had served for several years and on several occasions during illness of the regular foreman. The current foreman had so far served for one session. Thus, the position of foreman of the state court grand jury which was at issue in *Rose* was a regular and in some cases a long term position. In contrast, although a federal grand jury may serve for as long as 18 months (Rule 6(g)), in this district several grand juries remain impanelled during the same period so that as a practical matter a particular grand jury in this district will normally convene only every other month for a period of one or two days.

The Court of Appeals for the Sixth Circuit in its opinion in *Mitchell v. Rose*, 570 F.2d 129 (6 Cir. 1978), described the duties of the grand jury foreman under the Tennessee law:

---

**7.** The court is aware of two cases in which the Court of Appeals for the Fifth Circuit, citing *Rose v. Mitchell*, has also *assumed* that "the right to a grand jury selected without regard to race applies fully when only the selection of the foreman is at issue rather than the selection of the grand jury venire". *Williams v. State of Mississippi*, 608 F.2d 1021, at 1022 (5 Cir. 1980); *Guice v. Fortenberry*, 633 F.2d 699, at 703, note 6 (5 Cir. 1980). Like *Rose v. Mitchell*, both of these cases involved a challenge to the appointment of a state grand jury foreman, neither case explained the basis for the assumption, and the assumption was not significant in view of the disposition of the case on the merits. Thus the discussion of the assumption in *Rose v. Mitchell*, infra, is applicable to these Fifth Circuit cases.

"He or she is expected to assist the district attorney in investigating crime, may administer oaths to all witnesses, conduct the questioning of witnesses, must indorse and sign all indictments, and like every other chairperson is in a position to guide, whether properly or improperly, the decision-making process of the body. Additionally, the indorsement and signature of the foreman or forewoman is indispensible to an indictment in Tennessee, and their absence voids the bill. *Bird v. State,* 103 Tenn. 343, 52 S.W. 1076 (1876)."

*Id.,* at 136.[8]

Thus, the position of the Tennessee grand jury foreman discussed in *Rose v. Mitchell* was different from the position of federal grand jury foreman in the method of appointment, in overall duties, and, in this court's opinion, in the potential for being a special position of influence over the decision-making process of the grand jury. The court finds, contrary to the conclusion of the court in *Jenison,* that *Rose v. Mitchell* is distinguishable in this respect. See *Jenison,* supra, at 661.

For the reasons above outlined, the court concludes that the decision of the Supreme Court in *Rose v. Mitchell* is not persuasive in this case involving the appointment of federal grand jury foremen. Therefore, with due respect to the opinion of Judge Hatchett in *Jenison,* this court declines to follow that decision.

■ In summary, it is the opinion of this court that no constitutional significance attaches to the position of foreman or deputy foreman of a federal grand jury. A criminal defendant has no constitutional right to a grand jury foreman or deputy foreman of a particular race or sex any more than he has a constitutional right to a grand jury panel of a particular composition or a constitutional right to a Supreme Court Justice, a United States Circuit Judge, or United States District Judge of a particular race or sex. Accordingly, the court holds that

the appointment by a district judge under Rule 6(c), Federal Rules of Criminal Procedure, of a foreman or deputy foreman in a federal grand jury drawn from a source constitutionally and statutorily composed, and thus representing a fair cross-section of the community, is not subject to constitutional attack on grounds of discrimination. See *Hale v. Henderson,* 485 F.2d 266, 269–270 (6 Cir. 1973).

Even assuming that the position of federal grand jury foreman is of constitutional significance so that a defendant can assert a constitutional challenge to a district court's appointment of grand jury foremen, and applying the decision of Judge Hatchett in *Jenison,* the court finds that the defendant's constitutional claim with respect to the appointment of grand jury foremen must in any event be dismissed. In *Jenison* Judge Hatchett found that the appointment of federal grand jury foremen can be subjected to constitutional scrutiny on the basis of either the Sixth Amendment fair cross-section requirement or the equal protection prohibition against purposeful discrimination. The court held with regard to the fair cross-section requirement that:

"Absent a showing that the impact of the grand jury foreperson is so substantial as to influence or alter the unique qualities and characters of the jury's individual members, a defendant's right to a fair cross-section is not denied where identifiable groups are underrepresented in the position of grand jury foreperson."

*Jenison,* at 661, 662.

The defendant here does not challenge the appointment of grand jury foremen based on the fair cross-section requirement (defendant's motion to dismiss indictment, ground 6), nor could he effectively do so since the court has held that a federal grand jury foreman does not, simply because of his position, have any special influence on the decision-making process of the grand jury.

---

**8.** In this district the questioning of the witnesses before the grand jury is normally done by    the United States Attorney.

█ The court in *Jenison* further held that a defendant can challenge the appointment of federal grand jury foremen on the ground that cognizable classes were purposefully excluded from the office of grand jury foreperson in violation of the Fifth Amendment equal protection right. *Jenison*, at 662.[9] However, in *Castaneda v. Partida*, supra, 430 U.S. at 494, 97 S.Ct. at 1280, 51 L.Ed.2d at 510, the Supreme Court held that "in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation *of his race or of the identifiable group to which he belongs*". (Emphasis added.) See also *Guice v. Fortenberry*, 633 F.2d 699, 703 (5 Cir. 1980). This test applies equally to a defendant alleging the purposeful exclusion of a particular class from the office of federal grand jury foreman.[10] Since defendant Cross is a white male he has no standing under an equal protection analysis to challenge the exclusion of blacks and females from the office of federal grand jury foreman in this district. The other defendants, who are also white males, likewise would have no standing to maintain such a challenge in this case.

For all of the reasons above stated, the defendant's motion to dismiss the indictment for reason that blacks and women have been discriminated against in the selection of grand jury foremen must be and is hereby denied.

### *The Motion to Recuse*

Although the foregoing discussion adequately deals with the issue before the Court, I feel compelled to address a tangential issue raised by the defendant in his Motion to Recuse. Paragraph 4 of the motion states that the three judges of this district "will, by necessity, be witnesses at any hearing on this matter". To enable the court to intelligently pass upon the recusal motion a preliminary hearing was conducted by the court in the course of which the court inquired of counsel for the defendant (Mr. Swearingen) what testimony he expected to elicit from the judges of this court if the judges appeared as witnesses, and defense counsel replied as indicated by the following colloquy between court and counsel:

THE COURT: Now you have filed a motion here to disqualify me as a judge in the case. I'm calling on you to specify what it is you intend to ask me as a witness, if I appear as a witness in the case, so I will know whether or not I should disqualify in the case. You just filed a blanket motion to disqualify every judge in this district. As an officer of the Court I'm calling on you to specify what it is you intend to ask us as witnesses, if we are witnesses in the case.

MR. SWEARINGEN: We intend to ask if you discriminated—how you considered a poor person, did you look at race, did you look at the sex, did you look at position in the community? Did you look at wealth? Did you look at your friends?

THE COURT: In other words, you intend to ask us how we arrived at the decision to appoint the person that we appointed?

MR. SWEARINGEN: Yes, sir.

THE COURT: Is that what you intend to ask?

MR. SWEARINGEN: Yes, and how you arrived at excusing people from Grand Jury service.

---

9. Purposeful discrimination against a class of persons in violation of the equal protection clause of the Fourteenth Amendment also constitutes a violation of the due process clause of the Fifth Amendment. *United States v. Gordon-Nikkar*, 518 F.2d 972 (5 Cir. 1975). See *Jenison*, supra, at 660.

10. In *Castaneda v. Partida* a Mexican-American alleged discriminatory exclusion of Mexicans from the Texas grand jury selection process. It appears that the court in *Jenison* did not disclose the race or sex of the defendants raising the equal protection challenge in that case. The court also did not mention the requirement of *Castaneda v. Partida* that the defendant must be a member of the class which he claims has been purposefully excluded from the process.

THE COURT: All right, in other words, that's the type questions you intend to ask?

MR. SWEARINGEN: Yes, sir.

THE COURT: In other words, our reasons for doing what we did or did not do?

MR. SWEARINGEN: Yes, sir.

THE COURT: That's what I wanted to know.

It is my opinion that the judges of this court could not be compelled to testify concerning the matter sought to be elicited by the defendant by such questioning.

Canon Two of the Code of Judicial Conduct requires that a judge avoid impropriety and the appearance of impropriety in all his activities. Among other things it states that he should not testify voluntarily as a character witness. The relevance of this language to the present issue is found in the commentary and an Advisory Opinion to the Canon. The commentary states that Canon Two should not be interpreted as affording judges a privilege against testifying in response to an official summons. Advisory Opinion No. 9 expresses the opinion of the Advisory Committee that, if subpoenaed, a judge must respond to the subpoena and that the trial judge should make it clear that the judge witness was testifying in response to a subpoena. What Canon Two and its explanatory notes do *not* provide, however, is a standard for determining when a judge may be *compelled* to testify. To determine this it is necessary to look to the case law.

As to a cause not on trial before him, there is general agreement that a judge is *competent* to testify. There is not as much agreement as to whether a judge is immune from service of process or may be compelled to testify in a cause not on trial before him. Even assuming judges are not immune from service of process, the cases seem to be in agreement that judges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed. *Annot., Judge As Witness In Cause Not On Trial Before Him*, 86 A.L.R.3d 633 (1978).

In *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1940), the Supreme Court held that it was error for a district court to compel the Secretary of Agriculture to testify as to the manner in which he reached his decision. The court compared the proceeding before the Secretary to one before a judge and stated that an examination into the mental processes of a judge would be destructive of judicial responsibility and thus should not be permitted, the court stating in the body of its opinion:

"Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected."

*Id.*, at 422, 61 S.Ct. at 1004–05.

In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the court determined that examination of an administrative decision-maker would be permitted only with a strong showing of bad faith or improper behavior and subsequent cases have adopted this principle and have upheld the refusal to enforce subpoenas for oral testimony of decision-makers as to the basis for their opinions "absent extreme and extraordinary circumstances",[11] and such circumstances could only be shown after overcoming the presumption of regularity as to the acts of the decision-maker. *Beverly v. U. S.*, 468 F.2d 732, 743 (5 Cir. 1972).

In *United States v. Dowdy*, 440 F.Supp. 894 (W.D.Va.1977), the defendant was indicted for testifying falsely before a grand jury. Prior to her appearance before the grand jury she had been adjudged in contempt by District Judge Glen Williams for improperly invoking her Fifth Amendment privilege and for her attitude and demeanor. The defendant claimed that the actions of Judge Williams in this matter coerced

---

11. See *South Terminal Corp. v. EPA*, 504 F.2d 646 (1 Cir. 1974); *KFC National Management Corp. v. NLRB*, 497 F.2d 298 (2 Cir. 1974); *Montrose Chemical Corp. v. Train*, 491 F.2d 63 (D.C.Cir.1974).

her into testifying before the grand jury, thus providing her with a defense to the charge of making false statements before the grand jury, and she contended that Judge Williams' testimony was necessary in regard to this defense. The Government made a motion to quash the subpoena which had been served upon Judge Williams, and District Judge Dalton, who presided in the criminal trial, sustained the motion, stating:

"While a judge enjoys no special privilege from being subpoenaed as a witness, it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony. Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to 'frivolous attacks upon its dignity and integrity, and ... interruption of its ordinary and proper functioning.' *U. S. v. Valenti*, 120 F.Supp. 80 (D.N.J.1954)."

*Id.*, 896.

The test which should be applied in determining whether a judge may be compelled to testify is well stated by Judge Austin, of the United States District Court for the Northern District of Illinois, in *Standard Packaging Corporation v. Curwood, Inc.*, 365 F.Supp. 134 (1973), as follows:

"Generally, all individuals are subject to the lawful authority of a competent court to compel testimony of any facts within their knowledge and relevant to the issues at hand. (Citations omitted.) An exemption from compulsory testimony is recognized in certain situations to protect the integrity and individual responsibility of government officials whose duties involve the exercise of judicial and quasi-judicial authority (Citations omitted.)

.    .    .    .    .    .

"The essential line of demarcation appearing from the cases is that judicial and quasi-judicial officers may be compelled to testify only as to relevant matters of fact that do not probe into or compromise the mental processes employed in formulating the judgment in

question.... Thus, even though a particular inquiry may be factually directed, it may still be objectionable if it invades upon the official's good faith decision-making prerogatives."

The appointment of a grand jury foreman and deputy foreman by a district court judge is clearly a subjective decision made in the exercise of the judge's judicial authority and is not subject to assault on the witness stand. To require a judge to explain *why* he made the choice he did would be an intolerable invasion into the mental processes employed by him in making that decision. Since that is exactly what counsel for the defendant in this case has stated he would seek to do with regard to the three judges of this court it is clear that the judges would be under no compulsion to testify, and since they would not be witnesses in the case there would be no reason for their recusal.

In any event, the defendant's claim that blacks and women have been discriminated against in the selection of grand jury foremen having been dismissed, there is no reasonable likelihood that any of the three judges of this district will be witnesses at any future hearing in this matter.

Accordingly, the defendant's motion to recuse is hereby denied.