UNITED STATES of America,
Plaintiff-Appellee,

v.

William Howard CROSS, Sr.,
Defendant-Appellant.

No. 81–7783.

United States Court of Appeals,
Eleventh Circuit.

June 30, 1983.

Mervyn Hamburg, Appellate Section, Crim. Div., Washington, D.C., for plaintiff-appellee.

Duard R. McDonald, Marietta, Ga., for defendant-appellant, Cross, Sr.

Before JOHNSON and ANDERSON, Circuit Judges, and COLEMAN *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This appeal presents this Court with an opportunity to examine the issues involved in the evaluation of claims of race and sex discrimination in the selection of federal grand jury forepersons by United States District Judges. The government invites us to accept the district court's conclusion in this case that the office of federal grand jury foreperson is constitutionally insignificant and therefore that allegations of discrimination in the selection of forepersons cannot form the basis for a motion to dismiss a criminal indictment. But in light of prior precedent and our belief that discrimination in the selection of federal grand jury forepersons "strikes at the fundamental values of our judicial system and our society as a whole," *Rose v. Mitchell,* 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979), we decline the government's invitation and reverse the judgment of the district court.

## I.

In November 1980, a federal grand jury empanelled in the Middle District of Georgia indicted William Howard Cross, Sr., along with four codefendants, for conspiracy to import methaqualone (quaaludes), conspiracy to possess methaqualone with intent to distribute, importation, and possession. Before his trial, Cross moved to dismiss his indictment.[1] He alleged two grounds in support of this motion: first, that the procedures by which grand jurors and petit jurors had been selected in the Middle District of Georgia since 1973 did not ensure random selection from a fair cross section of the community as required by the Sixth Amendment and the Jury Selection and Service Act of 1968, as amended, 28 U.S.C.A. § 1861 *et seq.;* and second, that blacks and women had been discriminated against in the selections of grand jury forepersons, in violation of the Fifth Amendment.[2] Cross subsequently filed a motion for recusal of the three district judges of the Middle District of Georgia who had participated in the selection of grand jury forepersons since 1973.

The district court entered an opinion and order on these motions 1) reserving ruling on the challenges to the composition of the grand and petit juries,[3] 2) denying the challenge to the selection of grand jury forepersons, and 3) denying the recusal motion. *United States v. Cross,* 516 F.Supp. 700 (M.D.Ga.1981). Concerning the challenge to the foreperson selections, the court stated that

it is the opinion of this court that no constitutional significance attaches to the position of foreman or deputy foreman of a federal grand jury. A criminal defendant has no constitutional right to a grand jury foreman or deputy foreman of a particular race or sex any more than he has a constitutional right to a grand jury panel of a particular composition or a constitutional right to a Supreme Court Justice, a United States Circuit Judge, or United States District Judge of a particular race or sex. Accordingly, the court holds that the appointment by a district judge under Rule 6(c), Federal Rules of Criminal Procedure, of a foreman or deputy foreman in a federal grand jury drawn from a source constitutionally and statutorily composed, and thus representing a fair cross-section of the community, is not subject to constitutional attack on grounds of discrimination.

---

* Honorable James P. Coleman, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Two of Cross's codefendants waived a jury trial and were convicted, the third pled guilty, and the fourth was a fugitive as of the time of the filing of this appeal.

2. According to Cross, no blacks or women had served as foreperson on any of the fifteen grand juries empanelled in the Middle District of Georgia between July 31, 1973, and May 29, 1981.

3. The district court, after evidentiary hearings on the grand and petit jury challenges, ruled against them; Cross does not raise these challenges in this appeal.

*Id.* at 705 (citing *Hale v. Henderson,* 485 F.2d 266, 269–70 (6th Cir.1973), *cert. denied,* 415 U.S. 930, 94 S.Ct. 1442, 39 L.Ed.2d 489 (1974)). The district court also ruled that Cross lacked standing to challenge the selections of grand jury forepersons. *Id.* at 706. Cross subsequently was tried and convicted. In this appeal, he contends that the district court erred in denying him standing, in concluding that the office of federal grand jury foreperson is constitutionally insignificant, and in denying his recusal motion. We address each contention in turn.

## II.

■ The district court denied Cross standing to raise his Fifth Amendment challenge to the selections of grand jury forepersons because Cross is a white male. In denying standing, the court quoted dictum in *Castenada v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977), suggesting that "in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of *his* race or of the identifiable group *to which he belongs.*" (emphasis added). To the extent that this language suggests that a defendant must be a member of the underrepresented race or group, it is at best dictum because Rodrigo Partida's challenge to the composition of grand juries was restricted to an allegation of discrimination against Mexican-Americans who, like him, had Spanish surnames. As we recognized in *United States v. Perez-Hernandez,* 672 F.2d 1380, 1386 (11th Cir. 1982), the Court's reference in *Castenada* to "his" race or group may have been meant only to describe "the particular defendants involved in that case." At no other point in the *Castenada* opinion did the Court suggest that a person who is not a member of an underrepresented group cannot challenge the grand jury selection process. Thus, *Castenada* did not present or decide the issue of a defendant's standing to challenge grand jury or grand jury foreperson selections.

Similarly, *Rose v. Mitchell, supra,* which quoted the language at issue in *Castenada, see* 443 U.S. at 565, 99 S.Ct. at 3005, also does not stand for the proposition that only members of the underrepresented group may challenge grand jury foreperson selections. In *Rose,* two black defendants challenged the selection of Tennessee grand jury forepersons on grounds of underrepresentation of blacks, so the question of standing was not presented or discussed. In fact, the *Rose* Court's description of the class of persons adversely affected by discrimination in the selection of grand jury forepersons arguably suggests a broad view of standing:

> The harm is not only to the accused, indicted as he is by a jury from which a segment of the community has been excluded. It is to society as a whole. "The injury is not limited to the defendant— there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." *Ballard v. United States,* 329 U.S. 187, 195, 67 S.Ct. 261, 265, 91 L.Ed. 181 (1946).

443 U.S. at 556, 99 S.Ct. at 3000.

The significance of the fact that neither *Castenada* nor *Rose* presented or decided the question of standing is that the holding of *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972)—a case which the district court did not cite—therefore remains good law. In *Peters,* a majority of the Court held that the defendant Peters, a white male, had standing to challenge the exclusion of blacks from jury service in Muscogee County, Georgia.[4] That *Peters* remains good law is confirmed by a favor-

4. Justice Marshall, in an opinion joined by Justices Douglas and Stewart, analyzed the exclusion of blacks from grand jury service as a violation of due process. In a concurring opinion, Justice White, joined by Justices Brennan and Powell, framed the issue as a statutory violation. *See* 18 U.S.C.A. § 243. But as the Supreme Court later noted, "[s]ix members of the Court [in *Peters*] agreed that petitioner was entitled to present the issue and concluded that he had been deprived of his federal rights," even though the defendant was white. *Taylor v. Louisiana,* 419 U.S. 522, 526, 95 S.Ct. 692, 695, 42 L.Ed.2d 690 (1975).

able citation to *Peters* in *Taylor v. Louisiana,* 419 U.S. 522, 526, 95 S.Ct. 692, 695, 42 L.Ed.2d 690 (1975), a case in which the Court permitted the defendant Taylor, a male, to raise a Sixth Amendment challenge to his jury venire for underrepresentation of women. "[T]here is no rule," the court held, "that claims such as Taylor presents may be made only by those defendants who are members of the group excluded from jury service." *Id. Taylor* thus supports our statement in *Perez-Hernandez, supra,* 672 F.2d at 1386, that "[t]he holding in *Peters v. Kiff* is clear and unambiguous and has never been expressly overruled." On this ground, we permitted Perez-Hernandez, a male Hispanic, to challenge the exclusion of blacks and women from service as federal grand jury forepersons, and in *United States v. Holman,* 680 F.2d 1340, 1355–56 (11th Cir.1982), we permitted a white male to do the same.

In light of *Peters v. Kiff, Taylor v. Louisiana, United States v. Perez-Hernandez,* and *United States v. Holman,* we conclude that appellant Cross, a white male, has standing to challenge the selection of grand jury forepersons on grounds of underrepresentation of blacks and women.

### III.

Having decided that Cross has standing to raise his claim of discrimination in the selection of grand jury forepersons, we turn to the merits of the issue of whether the office of federal grand jury foreperson is, as the district court concluded, constitutionally insignificant.

As recently as *Rose v. Mitchell, supra,* the Supreme Court reaffirmed the longstanding fundamental principle that discrimination in the administration of justice harms the accused and undermines the integrity of the judicial process itself. This recognition traces its roots back to *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1879), in which the Supreme Court addressed a claim of exclusion of blacks from jury service. "The very fact that colored people are singled out and expressly denied by a statute all right to participate in the administration of the law, as jurors, because of their color, though they are citizens, and may be in other respects fully qualified," the *Strauder* Court stated, "is practically a brand upon them, affixed by the law, an assertion of their inferiority, and a stimulant to that race prejudice which is an impediment to securing to individuals of the race that equal justice which the law aims to secure to all others." *Id.* at 308, 25 L.Ed. 664. One hundred years later, the Court in *Rose* was presented with a claim of exclusion of blacks from service as state grand jury forepersons in Tennessee. The Court quoted at length from *Strauder, see* 443 U.S. at 555, 99 S.Ct. at 2999, and then went on to suggest that:

Discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice. Selection of members of a grand jury because they are of one race and not another destroys the appearance of justice and thereby casts doubt on the integrity of the judicial process. The exclusion from grand jury service of Negroes, or any group otherwise qualified to serve, impairs the confidence of the public in the administration of justice. As this Court repeatedly has emphasized, such discrimination "not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government." *Smith v. Texas,* 311 U.S. 128, 130 [61 S.Ct. 164, 165, 85 L.Ed. 84] (1940) (footnote omitted). The harm is not only to the accused, indicted as he is by a jury from which a segment of the community has been excluded. It is to society as a whole. "The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." *Ballard v. United States,* 329 U.S. 187, 195, 67 S.Ct. 261, 265, 91 L.Ed. 181 (1946).

The government now takes the position that the principles articulated in *Strauder* and *Rose* do not apply to claims of discrimi-

nation in the selection of *federal* grand jury forepersons. The government asserts that, in the federal system, the grand jury foreperson performs only "ministerial" tasks and that the position has little or no significance. This is, the government continues, in contrast with the position of grand jury foreperson in some states (such as Tennessee) where significant responsibilities are set out by statute. In the federal system, the only description of the grand jury foreperson's responsibilities is contained in Fed. R.Crim.P. 6(c), which provides:

> Foreman and Deputy Foreman. The court shall appoint one of the jurors to be foreman and another to be deputy foreman. The foreman shall have power to administer oaths and affirmations and shall sign all indictments. He or another juror designated by him shall keep a record of the number of jurors concurring in the finding of every indictment and shall file the record with the clerk of the court, but the record shall not be made public except on order of the court. During the absence of the foreman, the deputy foreman shall act as foreman.

In support of its argument that the office of foreperson is insignificant, the government further points out that the absence of the foreperson's signature is not fatal to an indictment. *See* Fed.R.Crim.P. 6(c) advisory committee note; *Frisbie v. United States,* 157 U.S. 160, 163–65, 15 S.Ct. 586, 587–86, 39 L.Ed. 657 (1895).

The Supreme Court has never addressed the question of whether the position of federal grand jury foreperson is constitutionally significant. The government contends that the Court has never even decided the constitutional significance of the office of grand jury foreperson in any of the 50 states. The Court in *Rose* did assume, without deciding, that a defendant may allege discrimination in the selection of Tennessee grand jury forepersons as a basis for

a motion to dismiss his indictment. *See* 443 U.S. at 551 n. 4, 99 S.Ct. at 2998 n. 4; *see also Williams v. State of Mississippi,* 608 F.2d 1021, 1022 (5th Cir.1979) (assuming, without deciding, that right to grand jury selected without regard to race applies to selection of Mississippi grand jury foreperson), *appeal dismissed,* 449 U.S. 804, 101 S.Ct. 49, 66 L.Ed.2d 8 (1980). The *Rose* Court did not have to decide the issue because the Court found that the petitioner's evidence was insufficient to make out a prima facie case of discrimination. *See* 443 U.S. at 564–74, 99 S.Ct. at 3004–09. Nevertheless, the thrust and spirit of the language in *Rose,* which detailed the costs to defendants and to society of discrimination in the administration of justice, suggests to us that the Supreme Court still believes in the importance of providing a viable remedy for such discrimination.

■ Since *Rose,* the former Fifth Circuit and the Eleventh Circuit have directly addressed claims of discrimination in grand jury foreperson selections in both the state system and the federal system.[5] In *Guice v. Fortenberry,* 661 F.2d 496 (5th Cir.1981) (en banc), two black persons convicted of grand theft in Louisiana state court brought a federal habeas corpus petition alleging that they were entitled to a new trial because blacks had been systematically excluded from service as Louisiana grand jury forepersons. The en banc court, after noting that the Supreme Court in *Rose* had assumed, without deciding, that the position of grand jury foreperson in Tennessee is constitutionally significant, concluded that

> [i]f convictions must be set aside because of taint of the grand jury, we see no reason to differentiate the result because discrimination affected only the foreman. Accepting the assumption made in *Rose v. Mitchell,* we hold, therefore, that the district court properly considered the claim of discrimination in the selection of

---

**5.** The Eleventh Circuit has adopted as binding precedent the case law of the former Fifth Circuit handed down as of September 30, 1981, unless and until such precedent is overruled or modified by this Court en banc. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)

(en banc). Decisions of the full en banc court of the former Fifth Circuit handed down after September 30, 1981, are also binding. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

[Louisiana] grand jury foremen made in the habeas corpus petition filed by Guice and Claxton.

661 F.2d at 499. Soon thereafter, this holding was applied to federal grand jury foreperson selections in *United States v. Perez-Hernandez,* 672 F.2d 1380, 1386 (11th Cir. 1982). *Accord, United States v. Holman,* 510 F.Supp. 1175 (N.D.Fla.1981) (Hatchett, Circuit Judge, sitting by designation) (claim of discrimination in selection of federal grand jury forepersons), *aff'd in relevant part,* 680 F.2d 1340 (11th Cir.1982); *United States v. Jenison,* 485 F.Supp. 655, 660–61 (S.D.Fla.1979) (Hatchett, Circuit Judge, sitting by designation) (same). *See also United States v. Abell,* 552 F.Supp. 316, 320–21 (D.Me.1982); *but see United States v. Hobby,* 702 F.2d 466, 470–71 (4th Cir.1983). Both *Perez-Hernandez* and *Holman* are directly on point and, as prior panel decisions of this Circuit, they are binding on us.

■ Even if we were not bound by Eleventh Circuit precedent, we would not adopt the government's contention that the position of federal grand jury foreperson is too insignificant to·form a basis for challenging an indictment. Three reasons support this conclusion.

First, the responsibilities and duties of the foreperson in the federal system cannot, in our view, be dismissed as merely ministerial.[6] For example, the foreperson decides when to contact the district judge, and the foreperson consults with the judge outside the presence of the grand jury.[7] Communications between the United States Attorney's office and the grand jury are through the foreperson. The foreperson decides when to convene and recess the grand jury.

The foreperson, acting alone, may excuse grand jurors on a temporary basis. The foreperson may decide the order in which witnesses are called. The foreperson maintains order in the grand jury. The foreperson helps the United States Attorney decide whether to initiate contempt proceedings against recalcitrant witnesses. And according to an offer of proof made by Cross in the trial court, Assistant United States Attorneys were even prepared to testify that on occasion they had sought grand jury subpoena approval from the foreperson acting alone without the consent of the entire grand jury. These duties and responsibilities, and numerous others, considered in isolation, may under certain circumstances seem "ministerial." However, the overall extent and nature of the foreperson's responsibility for the very functioning of the grand jury should not permit the conclusion that the position is constitutionally insignificant.

This reasoning is reinforced by testimony of federal district judges in cases in the Northern District of Florida and the Southern District of Florida as to their selection procedures for grand jury forepersons. *See United States v. Holman,* 510 F.Supp. at 1180; *United States v. Jenison,* 485 F.Supp. at 665–66. Almost uniformly, the district judges selected as forepersons those who had good management skills, strong occupational experience, the ability to preside, good educational background, and personal leadership qualities. One judge even testified that the foreperson should be someone who could not "be easily led by the United States Attorney." *United States v. Holman,* 510 F.Supp. at 1180.[8] If the duties of

6. The district court, in reaching a contrary conclusion on this issue, held no evidentiary hearings to determine the foreperson's responsibilities. In light of prior precedent and the analysis *infra,* we decide this issue as a matter of law.

7. The record in this appeal includes correspondence between a grand jury foreperson and District Judge Owens which reflects a substantial role on the part of the foreperson in the selection of a deputy foreperson and in determining the grand jury's schedule.

8. For example, Appellant Cross made an offer of proof to the trial court of testimony of United States Attorneys that would show that "[o]n several occasions, the grand jury foreman was critical of the manner in which the United States Attorney's office conducted investigations before the grand jury, and the United States Attorney's office was responsive to those criticisms."

The nature of the relationship between the grand jury foreperson and the United States Attorney could have a significant effect on the deliberations of the grand jury. For example,

the foreperson were purely ministerial, a person with clerical experience would suffice. The fact that district judges look for far more than that suggests that the position is not insignificant.

Second, even if leadership qualities and administrative ability were not considered in the selection process, the fact of a person's selection as grand jury foreperson may render the position significant. A foreperson has only one vote on the grand jury, but the selection by the district judge might appear to other grand jurors as a sign of judicial favor which could endow the foreperson with enhanced persuasive influence over his or her peers.[9]

Third, regardless of the importance of the office of grand jury foreperson, we would not be inclined to refuse to inquire into a federal judge's selection process. To do so would leave us in the indefensible position of scrutinizing, pursuant to *Rose v. Mitchell,* state grand jury foreperson selections for discrimination, while we would look the other way when similar challenges are raised against federal selections. We do not presume to guess at this point whether the federal judges of the Middle District of Georgia have in fact discriminated; we cannot, however, refuse to even permit an inquiry into their selection process. As the

Court in *Rose* indicated, discrimination in the selection process "is especially pernicious in the administration of justice," 443 U.S. at 555, 99 S.Ct. at 2999, and "strikes at the fundamental values of our judicial system," *id.* at 556, 99 S.Ct. at 3000. For this reason, the Court concluded that, regardless of whether a defendant could prove actual prejudice from such discrimination, "permitting challenges to unconstitutional . . . action by [those who make grand jury selections] has been, and is, the main avenue by which [constitutional] rights are vindicated in this context." *Id.* at 558, 99 S.Ct. at 3001.[10] The same should be true in the federal system. *See United States v. Cabrera-Sarmiento,* 533 F.Supp. 799, 802 (S.D. Fla.1982).

The government seeks to distinguish *Rose* from the instant case on the ground that the Tennessee grand jury foreperson performs significant functions which the federal foreperson does not. In light of our earlier discussion of the federal position, we find few significant differences, and these differences are insufficient for a conclusion that the federal position is constitutionally insignificant. One difference is that the responsibilities of the federal foreperson have been developed by custom, practice,

---

in the recent case of *Bryant v. Wainwright,* 686 F.2d 1373 (11th Cir.1982) *cert. denied,* —— U.S. ——, 103 S.Ct. 2096, 75 L.Ed.2d —— (1983), Mattie Lee Bryant was indicted by a Florida state grand jury for first degree murder of her husband. The grand jury foreperson was a white male, and one of the issues presented to this Court was discrimination in the selection of forepersons. According to the state trial court, the shooting of her husband, allegedly an act of self defense against his beatings, was "probably second degree [murder] or manslaughter at most." *See* Appellant's Brief at 31, *Bryant v. Wainwright,* No. 81-5483. In cases such as Mattie Lee Bryant's, which present sensitive sexual or racial issues, the composition of the grand jury and the sex and race of its foreperson conceivably could be of critical importance.

**9.** This analysis is limited to Fifth Amendment claims. As several courts have noted, claims of underrepresentation in grand jury foreperson selections presented under the Sixth Amendment raise entirely different considerations. *See, e.g., United States v. Musto,* 540 F.Supp. 346, 361-62 (D.N.J.1982) (federal

grand jury foreperson's powers insufficient for purposes of Sixth Amendment claim; merits of Fifth Amendment claim not addressed); *United States v. Breland,* 522 F.Supp. 468, 474-77 (N.D.Ga.1981) (federal grand jury foreperson does not possess sufficient influence over grand jury to permit Sixth Amendment challenge to foreperson selections; Fifth Amendment claim, however, may be presented). In part because of the analytical differences between Sixth Amendment claims and Fifth Amendment claims, we held in *United States v. Perez-Hernandez,* 672 F.2d at 1384-85, that federal grand jury foreperson selections may not be challenged under the Sixth Amendment. Cross raised only a Fifth Amendment challenge in district court and that is all we consider here.

**10.** In approving the remedy of motions to dismiss indictments, the Court rejected alternative remedies, such as injunctions and other civil actions, as impractical and "expensive to maintain and lengthy." 443 U.S. at 558, 99 S.Ct. at 3001.

and necessity. Unlike the situation in Tennessee, no federal statute describes the role in detail. In terms of practical effect, however, we fail to see any difference as to whether the position is described by statute or by less formal means. And we do not understand the government to be arguing that, if the foreperson undertakes the duties we described above, he or she is acting *ultra vires*. The Tennessee foreperson also apparently serves more than one grand jury and assists the district attorney in investigating crime. *See Mitchell v. Rose*, 570 F.2d 129, 136 (6th Cir.1978). But for constitutional purposes, the foreperson's role as leader of any given grand jury should far outweigh his role outside the grand jury. Another possible difference, noted above, is that, unlike the situation in Tennessee, the signature of the federal grand jury foreperson is not a prerequisite to a valid indictment. Nevertheless, Federal Rule 6(c) states that the foreperson's signature "shall" be on the indictment; thus, the act of signing is one function that may be only ministerial.[11]

The district court and the government also point out that in Tennessee the foreperson does not actually serve as a member of any grand jury, but instead is selected from the public at large and serves several grand juries. In the federal system, on the other hand, the district judge selects a foreperson from the grand jury after it has been empanelled. But this difference is irrelevant insofar as it pertains to the significance of the foreperson's responsibilities in presiding over any given grand jury. Moreover, as long as the pool of potential forepersons contains qualified blacks and women, there should be no difference over the long run in the racial and sexual identity of those selected. In fact, if anything, the office of Tennessee foreperson arguably is less important than that of federal foreperson because the Tennessee foreperson, unlike the federal foreperson, is restricted to performing administrative functions. He does not participate in the grand jury

voting process, *see Rose v. Mitchell*, 443 U.S. at 560, 99 S.Ct. at 3002, and thus probably does not have the potential for influence on the grand jury's deliberations that the federal foreperson does.

To decide this appeal we need not speculate as to the possible effect of the alleged discrimination on Cross and other defendants in the Middle District of Georgia. It is enough for us that appellant has alleged discrimination in the selection process for a position on the grand jury which has significant responsibilities. Otherwise, if we were to decide that the foreperson position is insignificant, it would in our view be but a small step toward deciding in the next case that other compositional defects in the grand jury also are irrelevant. If the grand jury is to effectively fulfill its role as a check on prosecutorial abuse, the judicial system must jealously guard against attempts at undermining the grand jury's constitutional significance. For this reason, we disagree with the conclusion of the district court.

### IV.

The basis for Cross's recusal motion was that, having made the foreperson selections, the district judges of the Middle District of Georgia would be called as witnesses in a hearing on the merits of the foreperson discrimination claim. The district court, reasoning that the claim was to be dismissed and that "judges are under no obligation to divulge the reasons that motivated them in their official acts," concluded that a district judge's "subjective decision made in the exercise of the judge's judicial authority" should not be "subject to assault on the witness stand." 516 F.Supp. at 707–08.

Challenges to federal grand jury foreperson selections have been brought in other federal district courts in this Circuit. In each of these cases, the courts apparently have had little difficulty in calling federal

---

11. Moreover, the federal grand jury foreperson's signature on an indictment gives the indictment a presumption of validity. *Ward v.*

*United States*, 694 F.2d 654, 658 (11th Cir. 1983).

district judges to the witness stand. For example, in *United States v. Jenison,* 485 F.Supp. at 665, eight United States District Judges from the Southern District of Florida testified as to the criteria they utilized in making grand jury foreperson selections, and as to whether they discriminated on the basis of race or sex. And in *United States v. Holman,* 510 F.Supp. at 1180, a federal district judge testified concerning the selection procedures in the Northern District of Florida. *See also United States v. Cabrera-Sarmiento,* 533 F.Supp. at 805 n. 2; *United States v. Breland,* 522 F.Supp. 468, 471–74 (N.D.Ga.1981) (testimony of nine federal district judges). Further, the practice of calling federal judges to testify in these cases has been discussed, and approved *sub silentio,* on two occasions in the Eleventh Circuit. *See United States v. Holman,* 680 F.2d at 1357; *United States v. Perez-Hernandez,* 672 F.2d at 1387–88 (defendant adopted record in the *Jenison* case for purposes of his dismissal motion).

■ Even with this precedent, we recognize that "[i]t is a firmly established rule in our jurisprudence that a judge may not be asked to testify about his mental processes in reaching a judicial decision." *Washington v. Strickland,* 693 F.2d 1243, 1263 (5th Cir. Unit B 1982) (en banc) (testimony of state trial judge concerning his reasons for imposing death penalty inadmissible), *cert. granted* on other grounds, —— U.S. ——, 103 S.Ct. 2451, 75 L.Ed.2d ——. But the matter before us is clearly collateral to any judicial decision that forms part of a traditional judicial proceeding. As the person who selects the foreperson, a federal judge performs the same task that some states have delegated to jury commissioners. Moreover, the importance of the interests at stake and the absence of any alternative source of evidence concerning Cross's claim may suggest special reasons for hearing the testimony of a federal district judge. And hearing such testimony should not undermine the policies articulated by the court in *Washington* which favored exclusion in that case—namely, the risk of inaccurate testimony, the importance of finality and integrity of judgments,

and considerations of federalism in habeas corpus proceedings. *See* 693 F.2d at 1263.

■ The question of recusal, however, should be decided as an initial matter by the district judge. For this reason, we remand this issue to the district court for reconsideration in light of our holding permitting Cross to present his claim, and in light of the fact that the testimony of a federal district judge in this matter probably would not conflict with the general rule against probing a judge's mental processes.

### V.

For the above reasons, we REVERSE the judgment of the district court which denied appellant's foreperson discrimination claim and his recusal motion and REMAND for further proceedings consistent with this opinion.