## STATE v. CAMBRON.

An indictment is valid, though found by a grand jury, members of which were drawn irregularly; they having the requisite qualifica- tions.

The keeping of a disorderly house, being an offense not consist-- ing of a specific act, but in conducting a public nuisance, an indict- ment therefor need not allege the particular location of the house, but. merely that it was in the county, so as to show jurisdiction.

It is for the court to determine, from the evidence and the man--

ner and conduct of witnesses, whether they are unwilling witnesses, so as to allow leading questions to be propounded to them.

For the court to state in the presence of the jury that witnesses are unwilling, and that therefore leading questions may be asked them, is not error.

Exercise of the court's discretion in allowing leading questions to be asked witnesses as unwilling will be reviewed only for manifest abuse of such discretion.

On a prosecution for keeping a disorderly house, testimony of witnesses as to the manner of conducting the business, in connection with the house, who went there, what they did there, the presence of other hacks there at the same time, the visits being at night, and the purpose and object of their going there, and the people taken there, is competent and admissible as showing the character of the house and the business carried on there; the provisions of Laws 1903, p. 180, c. 154, § 3, that on a trial for keeping a house of ill fame the state may, for the purpose of establishing its character, introduce evidence of the general reputation of the house so kept, not being exclusive, but merely cumulative.

On a prosecution for keeping a house of ill fame, evidence of sales of liquor on the premises, and by whom and in what manner made, is competent, in view of the manner of sale, to show the character of the house and defendant's connection with it.

On a prosecution for a felony, the state may, in the discretion of the court, dependent on the intentional withholding from the defendant of their names and the state's knowledge thereof, use witnesses whose names were not on the indictment.

On a prosecution for keeping a disorderly house, a justice of the peace may testify to the reputation of the house from discussions he had heard between peace officers; this not being the admission of proceedings in and records of the justice court.

It is not error, on a prosecution for keeping a disorderly house, to admit testimony of the sheriff as to finding together therein defendant and one of the female inmates, and as to the conversation at the time between them and with him.

One may be convicted of keeping a disorderly house, though some one else is equally guilty in maintaining it.

(Opinion filed, November 29, 1905.)

Error to Beadle County Court. Hon. CHAS. S. WHITING, Judge.

Claud Cambron was convicted of keeping a house of ill fame, and brings error. Affirmed.

*A. W. Wilmarth* and *A. W. Burtt*, for plaintiff in error. *Philo Hall, Atty. Gen.* (*Aubrey Lawrence, of counsel*), for the State.

CORSON, J. The plaintiff in error was indicted, tried, and convicted of the offense of keeping a house of ill fame in the county of Beadle, and sentenced to imprisonment in the state's prison for a term of years. The case is now before us on a writ of error to the circuit court of that county. Numerous errors are assigned and discussed by counsel for the plaintiff in error, and they will be taken up and disposed of in their order. Prior to the March term, 1905, the state's attorney of Beadle county and the county commissioners of that county requested the circuit court to call a grand jury, and the court thereupon by its order directed the sheriff to summon eight good and lawful men to constitute such grand jury. On the day the jurors were required to appear two failed to answer, and thereupon the court instructed the sheriff to summon two additional jurors as talesmen, which duty the sheriff performed, and the two additional jurors were impaneled and eworn and took part in the deliberations of the jury with the six remaining of the old panel.

It is contended by the plaintiff in error, whom we shall hereafter designate as defendant, that the court erred in making an order requiring the sheriff to summon the two additional jurors. It is further contended that the court was not authorized to impanel a grand jury as the reasons requiring the calling of such a jury were not fully set out in the request of the state's attorney made to the court. These questions are not properly before us, for the reason that they have not been made by statute grounds upon which a challenge to the panel may be interposed and it does not affirmatively appear that the defendant was in any manner prejudiced by the ruling of the court. Similar questions have recently been decided by this court in the case of State v. Shanley 20 S. D. 104 N. W. 523, and State v. Lamphere 20 S. D. 104 N. W. 1038, and the questions were so fully discussed in these cases that we deem a further discussion of them unnecessary. The true rule seems to be that an indictment found by a grand jury, one or more of whose members were irregularly drawn, but who possessed the requisite qualifications, is valid, and the proceedings by which a juror gets on the panel does not affect the validity of the action. Commonwealth v. Brown, 147 Mass. 585, 18 N. E. 587, 1 L. R. A. 620;

Carpenter v. People, 64 N. Y. 483; Ferris v. People, 35 N. Y. 125: Wilhelm v. People, 72 Ill. 468; Rolland v. Commonwealth, 82 Pa. 306; People v. Ah Chung, 54 Cal. 398; Cox v. People, 80 N. Y. 500; State v. Copp, 34 Kan. 522, 9 Pac. 233; Commonwealth v. Walsh, 124 Mass. 32; People v. Hooghkerk, 96 N. Y. 149; Commonwealth v. Moran, 130 Mass. 281; In re Wilson, 140 U. S. 585, 11 Sup. Ct. 870, 35 L. Ed. 513; People v. Lauder, 82 Mich. 109, 46 N. W. 956.

A demurrer was interposed to the indictment, upon the ground that the facts stated therein did not constitute a public offense, which was overruled. The offer of evidence at the trial was also objected to on the same ground, which was overruled by the court. The objection to the indictment made seems to be that it does not allege the specific lot or block or place where the house of ill fame was conducted, and for that reason the defendant contends that the indictment was uncertain and indefinite. It is true the indictment in this case designates no lot or block upon which the house was situated, but states generally, as in ordinary criminal cases, that it was within the county of Beadle. We are of the opinion that the demurrer to the indictment and objection to the evidence offered at the trial were properly overruled, as the law does not require in this class of cases that the particular lot or block or locality of the house should be designated. It is sufficient that it be alleged that the offense was committed within the county, and that the evidence showed such to be the fact. Counsel for defendant, in support of his contention, cites the case of State v. Burchard, 4 S. D. 548, 57 N. W. 491, but that case, in our view, is not authority in the case at bar. This court held in that case that in an indictment or information for the sale of intoxicating liquors it was necessary to specify or name the persons to whom the liquor was sold in order that the defendant might know what charge he was called upon to meet; but this is a case in which the offense does not consist of a specific act, but in conducting a public nuisance. In such an offense a specific place need not be alleged in the indictment. It is said in 7 Ency. of Plead. & Prac. p. 14: "The location of the house need not be alleged further than to show that the court has jurisdiction." As supporting the indictment given in the case at bar the

following cases may be cited. State v. Stevens, 40 Me. 559; Com. v. Shea, 150 Mass. 314, 23 N. E. 47; People v. Saunders, 29 Mich. 269; Huber v. State, 25 Ind. 175; Harlow v. Com. 11 Bush. 610; State v. Crogan, 8 Iowa, 523; State v. Prescott, 33 N. H. 212; Greensburg v. Corwin, 58 Ind. 518; Com. v. Welch, 1 Allen, 1; State v. Staker, 3 Ind. 570; State v. Hendricks, 15 Mont. 194, 9 Pac. 93; Handy v. State, 63 Miss. 207.

It is further contended by the defendant that the court erred in permitting certain witnesses to be asked leading questions, and in the court's stating in the presence of the jury that the witnesses were unwilling witnesses, and therefore permitted leading questions to be asked them. We are of the opinion that there was no error committed by the court in this ruling. It is clear from the evidence that the witnesses interrogated were unwilling witnesses and unfriendly to the prosecution, and in such case the court is authorized to permit leading questions to be asked the witnesses, and the contention that it was a matter for the jury to determine whether or not the witnesses were unwilling witnesses and were such as might be asked leading questions was a matter for the jury, is certainly untenable. It is for the court to determine whether or not the manner and conduct of the witnesses are such as to show them unwilling witnesses to whom counsel can propound leading questions. This is a well-recognized exception to the general rule, and the exercise of the court's discretion in permitting such questions will not be reviewed by this court, unless there is a manifest abuse of such discretion. Mr. Jones, in his work on Evidence ,says: "A well-recognized exception to the general rule which is under discussion permits leading questions to a witness who is hostile to the party calling him, or who, for any reason, may be deemed an unwilling witness. If it is apparent that the witness is attempting to promote the interest of the adverse party, or if the witness is, in fact, the adverse party, the court will be justified in permitting the direct examination to take the character of a cross-examination. * * * This unwillingness, or other state of mind of the witness, is to be decided by the judge from his demeanor upon the stand, and from such facts in evidence as may be shown that the witness, because of his relationship to the party, interest in the cause or for other rea-

son, has some bias against the one calling him or some disinclination to testify." Jones on Evidence, §817. "The subject is one of judicial discretion, and the allowing or refusing leading questions is not generally a ground for appeal." Id. § 819.

It is further contended by the defendant that other questions asked the witnesses as to the manner of conducting the business in connection with the house, as to who went there, as to what they were doing there, as to there being other hacks there at the same time, as to the visits being in the nighttime, and as to the purpose and object of their going there, and the people taken there, were incompetent and inadmissible, but we are of the opinion that they were clearly competent, as tending to show the character of the house, and the business carried on there, and that from such evidence the jury might properly find that the house was of the character designated in the indictment, namely; a house of ill fame. The object of the evidence was not to show any specific offense committed by any of the parties going there, but to show the character and nature of the business carried on there. The contention of the defendant that the character of the house could only be proven by reputation as provided by chapter 154, p. 179, Laws 1903, is clearly untenable as the provisions of that act were cumulative merely, and permit conviction upon evidence that would ordinarily be inadmissible in a criminal case; but the effect of the act is not to preclude proof of the facts and circumstances that may satisfy a jury of the existence of such a house independently of any proof of reputation. It will be noticed that by the third section of the act it is provided: "The state upon the trial of any person indicted, * * * for keeping a house of ill fame, may for the purpose of establishing the character of the house kept by the defendant, introduce evidence of the general reputation of the house so kept." It was competent for the state, therefore, to prove any fact tending to show that the house was a house of ill fame, or any circumstances from which a jury might properly infer that the house was kept for such unlawful purpose. The circumstances surrounding this house and the business conducted therein, brought out on the examination was entirely competent to prove the offense alleged. Morris v. State, 38 Tex. 603; Beard v. State, 71 Md. 275, 17 Atl. 1044, 4 L. R. A. 675;

Territory v. Chartrand, 1 Dak. 379, 46 N. W. 583; Commonwealth v. Cardoze, 119 Mass. 210; Sullivan v. State, 75 Wis. 650, 44 N. W. 647; State v. Williams, 30 N. J. Law, 102; Herzinger v. State, 70 Md. 279, 17 Atl. 81; O'Brien v. People, 28 Mich. 213; State v. Hendricks, supra; 14 Cyc. pp. 505-507   It may be proper to state· in the case at bar that there was ample evidence of the general reputation of the house kept by the defendant to support the verdict of the jury independently of the facts and circumstances proven at the trial.

It is further contended by the defendant that the court erred in admitting evidence of the sales of intoxicating liquors on the premises, and by whom they were made and the manner in which the sales were conducted, and claims that the said testimony was· incompetent and prejudicial, because it did not tend to show that the house was a house of ill fame, or that the defendant was the· keeper of or running such house; but we are of the opinion that such evidence was competent, considering the manner in which the sales were made upon the premises, as circumstances tending to show the character of the house itself.   The evidence was not offered for the purpose of proving that the defendant had violated the· license law of this state, but to show his connection with the house, and the manner in which it was being run by himself and the landlady, who is claimed to be his wife.

It is further contended by the defendant that the court erred in permitting the witness H. A. Van Dalsem to testify as a witness, on the ground that his name does not appear on the indictment, and the defendant had no proper notice to authorize the state to call him.   It appears affirmatively from the abstract that notice was· given to defendant's counsel soon after the opening of court on the same day in which the witness was called to testify, but that question may be regarded as settled by the decision of the late territorial Supreme Court in the case of Territory v. Godfrey, 6 Dak. 46, 50 N. W. 481, and by this court in State v. Boughner, 5 S. D. 464, 59 N. W. 736, adversely to the contention of the defendant. In the following cases this court held that permitting the state to· use on a prosecution for felony witnesses whose names were not upon the indictment is in the discretion of the trial court and de-

pendent upon the intentional witholding from the defendant of their names and the state's knowledge thereof: State v. Reddington, 7 S. D. 368, 64 N. W. 170; State v. Isaacson, 8 S. D. 69, 65 N. W. 430; State v. King, 9 S. D. 628, 70 N. W. 1046; State v. Thornton, 10 S. D. 350, 73 N. W. 196, 41 L. R. A. 530.

It is further contended that the questions asked the witness, Van Dalsem, a justice of the peace, relative to the character and reputation of this house, wherein the witness had testified that he heard its reputation discussed on several occasions by peace officers was error, on the ground that proceedings and records in the justice court were not admissible as evidence in the case at bar. This contention is evidently based, however, upon a misapprehension that the records of the court were offered in evidence which is not supported by the record before us, but the witness was simply showing the reputation by indicating the discussion thereof by the citizens of that community. Knowledge of the reputation of a person or house of this character is based upon what the witness has heard said relative to it in the community in which the person resides, or in which the house is situated, and we are satisfied that no error was committed by the trial court in permitting this testimony. We are of the opinion that there is no merit in the contention of defendant that the testimony of the sheriff relative to finding the defendant and one of the women who had been living in the house in question, as testified to by the witnesses, together in a hotel at Iroquois, and detailing the conversation that was had between them, or with the witness at that time, as this conversation was in the presence of both the defendant and the woman who claimed to be his wife, and the statement there made in the presence of the defendant was binding upon him, though the woman was not jointly indicted with him.

It is further contended that the court erred in refusing to instruct the jury that neither the husband or wife, as such, is responsible for the acts of the other, but such an instruction was not required by the evidence in the case, as it was not sought to hold the defendant for the acts of his alleged wife, but for his own acts in

connection with the keeping of the house. Even if the parties were jointly charged with the keeping of a house of this character or did keep such a house jointly, either could be found guilty of the offense, and a separate verdict could be rendered against him or her, and it is no defense to the defendant that some one else may have been equally guilty of maintaining this house. People v. Wright, 90 Mich. 362, 51 N. W. 517; Caldwell v. Com., 7 Dana 229; Stone v. State, 22 Tex. App. 185, 2 S. W. 585; Curd v. Com., 14 B. Mon. (Ky.) 386; Ross v. State, 70 S. W. 543.

It is further contended by the defendant that his motion made at the close of the evidence for a direction of the verdict in his favor should have been granted by the court, but we are of the opinion that the evidence was amply sufficient to warrant a conviction of the defendant for the offense charged, and that the court committed no error in refusing to grant the motion. The reproduction of the evidence in this opinion would serve no useful purpose as it is of that character usually admitted on the trial of such an action, and is clearly sufficient to support the verdict of the jury that the defendant was guilty of the crime charged.

Finding no error in the record, the judgment of the court below and order denying a new trial are affirmed.