■ JADE SQUARE AND TOWER, LTD., Plaintiff, v C.I.T. CORPORATION et al., Defendants. In the Matter of JOHN J. GALGAY, Respondent, v JADE SQUARE AND TOWER, LTD., Appellant. — Order of the Supreme Court, New York County (G. B. Smith, J.) entered November 20, 1981, granting the motion of Honorable John J. Galgay, Federal Bankruptcy Judge to quash a subpoena served upon him reversed, on the law and the facts, and the motion denied, without costs. On March 4, 1981 counsel for plaintiff Jade received a telephone call from Federal Bankruptcy Judge John J. Galgay, asking that they attend at his chambers on March 6. Upon their arrival on March 6, he informed them that he was aware of the instant lawsuit as well as another lawsuit entitled *White & Baxter v Jade Sq. & Tower*. While neither case had anything to do, directly, with any proceeding pending before him, he had been informed by counsel for the defendants that they intended to propose a settlement of both lawsuits. Seemingly, the proposed terms of settlement had been disclosed to him and he urged plaintiff's counsel to submit the offer to their client even if they did not view it with favor. Counsel agreed to do so. Shortly thereafter counsel for the

parties in this action met in Judge Galgay's courtroom. Judge Galgay was not present. An offer of $40,000 to be paid to Jade was allegedly made by counsel for C.I.T. and Talcott to settle both lawsuits. Counsel for plaintiff requested and were granted one week by counsel for defendants so that they could consult with their client. On March 12, they notified counsel for C.I.T. and Talcott that the offer was accepted. At that time they were informed that the offer had been conditioned on the premise that Murray Firestone, a principal of White and Baxter, Inc., the plaintiff in the lawsuit against Jade, would contribute $14,000 to the settlement and, in addition, White and Baxter would discontinue its suit against Jade. Firestone had refused to comply with the condition thus necessitating that the settlement be called off. Plaintiff, on the other hand, contends that the offer was unconditional. Thereafter defendants moved, pursuant to CPLR 3211 (subd [a], par 7) to dismiss the complaint on the ground that it failed to state a cause of action. Plaintiff countered with the claim that the action had been settled. Justice Shainswit, before whom the motion came on to be heard, referred the issue of settlement to a special referee for hearing. In connection with the hearing plaintiff caused a subpoena to be served on Judge Galgay, with whom, plaintiff contends, defendants' attorneys had discussed the terms of the proposed settlement both before it was submitted to plaintiff's counsel and following the submission. Judge Galgay moved to quash the subpoena, asserting, as grounds therefor, judicial immunity and the doctrine of Federal pre-emption. Few doctrines are more firmly established at common law than the immunity of Judges for acts performed within their judicial jurisdiction (*Pierson v Ray,* 386 US 547). The doctrine is a necessary corollary of the principal that in order to effect the proper administration of justice a Judge must be free to act upon his interpretation of the law without fear for personal consequences to himself (*Stump v Sparkman,* 435 US 349; *Bradley v Fisher,* 13 Wall [80 US] 335). Essential, however, to the invocation of the doctrine of judicial immunity is jurisdiction. However broad the doctrine may be, it cannot be invoked with regard to a matter over which the Judge has no jurisdiction. Here, Judge Galgay endeavored to facilitate an over-all settlement involving the cases which were not before him and which were pending in another court. Under these circumstances the mantle of judicial immunity cannot cloak his actions. Similarly, the doctrine of pre-emption, which finds origin in the salutary language of article VI of the Federal Constitution is not applicable. Here there is no endeavor to encroach upon Federal power. The subpoena is not in derogation of the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof" or of any treaties adopted pursuant thereto. Here there is no more than a direction to attend at a hearing and if the material on which Judge Galgay is interrogated is pertinent, to answer the questions put to him. His official duties are not involved, nor are any acts performed in his official capacity. Simply put, he is asked to bear witness in a matter which was not within his judicial competence. The Constitution poses no bar thereto. Finally, we note that a stipulation, other than one made in "open" court is not binding upon a party unless made in writing (CPLR 2104). We are not informed whether the alleged stipulation was dictated upon the record. From the fact that no stenographic transcript thereof is included in the record we assume that it was not. However, we take cognizance of the fact that the alleged agreement of settlement is not sought to be enforced in this proceeding. It is offered merely by way of defense to defendants' motion to dismiss. In holding as we do we in no way seek to indicate to the referee the admissibility or inadmissibility of any testimony which may be sought from Judge Galgay. That will have to be determined on a question-by-question basis. We do no more than hold that, in the circum-

stances here presented, Judge Galgay is not immune from the subpoena process. Concur — Sandler, J. P., Sullivan, Bloom and Asch, JJ.