**UNITED STATES of America,**
**Plaintiff,**

v.

**Lorenzo MUNOZ–FRANCO,**
**et al., Defendants.**

**Criminal No. 95–386(DRD).**

United States District Court,
D. Puerto Rico.

April 23, 2002.

Jorge L. Arroyo-Alejandro, San Juan, PR, Andres Guillemard-Noble, Nachman, Guillemard & Reb, San Juan, PR, Harry Anduze-Montano, San Juan, PR, for Lorenzo Munoz-Franco.

David W. Roman, Edif El Caribe, San Juan, PR, Ricardo L. Rodriguez-Padi, Jorge L. Diaz-Reveron, San Juan, PR, for Francisco Sanchez-Aran.

Michael S. Pasano, Zuckerman Spaeder Taylor Evans, Miami, FL, Joseph J. Rucci, Rucci, Burnham, Carta and Edelberg LLP, Darien, CT, Pedro Zorrilla-Martinez, San Juan, PR, for Ariel Gutierrez-Rodriguez.

Francisco M. Dolz-Sanchez, San Juan, PR, for Wilfredo Umpierre-Hernandez.

Michael S. Pasano, Zuckerman Spaeder Taylor Evans, Miami, FL, Pedro Zorrilla-Martinez, San Juan, PR, Graham A. Castillo-Pagan, Fort Buchanan, PR, for Enrique Gutierrez-Rodriguez.

Jorge E. Vega-Pacheco, Edna C. Rosario-Munoz, Desiree Laborde-Sanfiorenzo,

Maria Dominguez-Victoriano, U.S. Attorney's Office, San Juan, PR, for U.S.

## THIRD AMENDED OPINION AND ORDER

DOMINGUEZ, District Judge.

A controversy has matured as to whether the Defendant, Lorenzo Munoz–Franco (hereinafter "Munoz–Franco") may call as a character witness, among others, the Honorable Juan M. Perez–Gimenez, a Federal District Court Judge for the District of Puerto Rico. On April 17, 2002, the Government filed a motion requesting that the Court sustain the Government's objection to Munoz–Franco calling the Honorable Judge Perez–Gimenez, as a character witness. (Docket No. 1239). On April 18, 2002, Munoz–Franco filed a Memorandum of Law opposing the Government's objection. (Docket No. 1241). After careful consideration, the Court finds that the proffered testimony of Honorable Judge Perez–Gimenez carries the danger of unfair prejudice, misleading the jury, and also will ultimately constitute, under the facts particular to this case, a presentation of cumulative character evidence. Hence, pursuant to Fed.R.Evid. 403, the Court sustains the Government's objection to Munoz–Franco calling the Honorable Judge Perez–Gimenez, as a character witness. Docket No. 1239 is **GRANTED;** Docket No. 1241 is **DENIED.**

### I

This case, in which several bank executives and building manufacturers have been charged with committing, inter alia, bank fraud, is extremely technical. The jury trial has been on-going now for over fifteen (15) months, and it will probably last a couple of more weeks. The case is being litigated by competent assistant district attorneys and defense counsel which have, from time to time, raised several legal objections of the most interesting, and most difficult, nature. The objection which the Court now addresses is likewise not an easy undertaking.

At oral argument, on April 18, 2002, Munoz–Franco admitted ex parte at side bar to have several witnesses it intends to call to the stand in his favor as character witnesses. The list included prominent public personalities: bankers not related to the Caguas Federal Bank, a former stateside judge, and religious clergy. One of the intended character witness included in the list is the Honorable Judge Perez–Gimenez. At the time the controversy was argued by Munoz–Franco, he had already produced one character witness as to his reputation, attorney Vicente Ortiz–Colon. Mr. Ortiz–Colon stated having known the defendant Munoz–Franco in excess of twenty-five (25) years, providing character reputation in the community of Munoz–Franco as to honesty, integrity and law abiding.

In its motion requesting the striking of witness (Docket No. 1239), the Government provides several reasons to support its objection to Munoz–Franco's intentions of calling Judge Perez–Gimenez as a character witness. The Government raises ethical, as well as purely legal concerns under Fed.R.Evid. 403. The Government does not challenge, however, the argument that a judge may be called to testify in a case which he is not presiding over.

On April 18, 2002, Munoz–Franco rebutted with a Memorandum of Law opposing the Government's objection. (Docket No. 1241). In the motion, Munoz–Franco forcefully and correctly argues the general principle that judges may serve as competent witnesses in a cause not on trial before them. After pondering the issue, the Court has reached a decision.

The Court adds a critical factor. The Court, before deciding any potential 403 exclusion of the witness, either due to the probative value of character testimony being outweighed by the danger of unfair prejudice, or because of a potential misleading of the jury, or due to a potential cumulative effect, following the cases of *United States v. Valenzuela–Bernal*, 458 U.S. 858, 873, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) and *Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976), as outlined by *United States v. Sullivan*, 803 F.2d 87, 89–90 (3rd Cir.1986), stated that it would defer judgment on Judge Perez–Gimenez testifying until all other character witnesses testified first. Accordingly, the Court ordered all character witnesses to testify prior to the judicial testimony of Perez–Gimenez, *see Sullivan, id.*, pursuant to the explicit authorization of the Supreme Court in *Geders*, 425 U.S. at 86, 96 S.Ct. 1330 ("[t]o this end the [trial judge] may determine generally the order in which parties will adduce proof: his determination will be reviewed for abuse of discretion"). **Counsel for Munoz–Franco immediately stated that he would waive all other character witnesses.** The United States attorney then produced a long list of Munoz–Franco's potential character witnesses, which had been delivered prior to the government by counsel for Munoz–Franco. The Court, at side bar, confirmed that some of the proposed character witnesses in the witness list included, among others, a former Superior Court judge, attorneys, religious clergy, prominent public personalities and bankers. Subsequently, at a hearing held on Saturday, April 20, 2002, Munoz–Franco stated that if the Court did not allow Judge Perez–Gimenez to testify on his behalf, two other character witnesses would then be presented.

## II

### A. Sixth Amendment Right to Introduce Evidence

The Court agrees with Munoz–Franco that Judges, like all other persons, may be constitutionally compelled to testify in favor of a person accused of committing a crime. There can be no doubt that "the Sixth Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it." *Faretta v. California*, 422 U.S. 806, 818, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). Indeed, "[a] core purpose of the sixth amendment is that the defendant has the same rights to introduce evidence as the prosecution." 8 WIGMORE, EVIDENCE § 2191 (McNaughton rev.1961). Moreover, "[t]he Sixth Amendment right to confrontation and the Fifth Amendment right to due process of law require only that the accused be permitted to introduce all relevant and admissible evidence." *United States v. Kasto*, 584 F.2d 268, 272 (8th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979).

However, the Sixth Amendment rights "are not unlimited." *United States v. Walker*, 930 F.2d 789, 792 (10th Cir. 1991). The Supreme Court has established that "the right to present relevant testimony is not without limitation." *Michigan v. Lucas*, 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991):

The right "may," in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. We have explained, for example, that "trial judges retain wide latitude to limit reasonably a criminal defendant's right to cross-examine a witness "based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness' safety, or interroga-

tion that is repetitive or only marginally relevant." "
*Lucas,* 500 U.S. at 149, 111 S.Ct. at 1746 (internal citations omitted). Nevertheless, the Supreme Court also cautioned that "[r]estrictions on criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.' " *Id.* 111 S.Ct. at 1747 (*quoting Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987)).

## B. Testimony of Judges

■ The Court also agrees with Munoz–Franco that there is a general proposition that a judge is competent witness in a cause not on trial before him. *United States v. Cross,* 516 F.Supp. 700 (D.C.Ga. 1981)(As to cause not on trial before him, there is a general agreement that a judge is competent to testify); *Standard Packaging Corporation v. Curwood, Inc.,* 365 F.Supp. 134 (D.C.Ill.1973); *State v. Lewis,* 555 S.E.2d 348 (N.C.App.2001)(Judges are competent to testify); *State v. Fuller,* 56 Conn.App. 592, 744 A.2d 931 (2000); *Orion Enters v. Pope,* 927 S.W.2d 654 (Tex.1996); *Jade Square & Tower, Ltd. v. C.I.T. Corp.,* 87 A.D.2d 564, 448 N.Y.S.2d 194 (1982); *State v. Kelly,* 131 Vt. 582, 312 A.2d 906 (1973); *State v. Cambron,* 20 S.D. 282, 105 N.W. 241 (1905).

Generally, all individuals are subject to the lawful authority of a competent court to compel testimony of any facts within their knowledge and relevant to the issues at hand. An exception from compulsory testimony is recognized in certain situations to protect the integrity and individual responsibility of government officials whose duties involve the exercise of judicial and quasi judicial authority. The essential line of demarcation appearing from the cases is that judicial and quasi-judicial officers may be compelled to testify only as to relevant matters of fact that do not probe into or compromise the mental process employed in formulating the judgment in question .... Thus, even though a particular inquiry may be factually directed, it may still be objectionable if it invades upon the official's good faith decision-making prerogatives.

*Cross,* 516 F.Supp. at 708.

Thus, it is clear that a judge is not immune from being compelled to testify in a cause not before him or her. *Id.* Simply expressed, judges enjoy no special privilege from being subpoenaed as a witnesses, because the general rule requiring subpoenaed persons to appear and testify apply equally to judges. *Id.; see also Kelly,* 131 Vt. 582, 312 A.2d 906; *State v. Nagel,* 185 Or. 486, 202 P.2d 640 (1949), *cert. denied,* 338 U.S. 818, 70 S.Ct. 60, 94 L.Ed. 495. While it is true that case law dealing with this issue generally has precluded the testimony of judges in cases on which they have presided, there is no restriction for them testifying as character witnesses in other cases. *See People v. McGhee,* 193 Cal.App.3d 1333, 239 Cal. Rptr. 28, 36 (1987). Indeed, although Fed. R.Evid. 601 provides that "every person is competent to be a witness except as otherwise provided ...," Fed.R.Evid. 605 however establishes that "[t]he judge presiding at the trial may not testify in that trial as a witness."

## C. Fed.R.Evid. 403

Federal Rule Of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is **substantially outweighed by the danger of unfair prejudice,** confusion of the issues, **or misleading the jury, or** by considerations of undue delay, waste of time, **or needless presentation of cumulative evidence."**

*See* Fᴇᴅ.R.Eᴠɪᴅ. 403 (emphasis added). Under Fᴇᴅ.R.Eᴠɪᴅ. 403, courts determine whether, as a matter of law, the probative value of otherwise relevant and admissible evidence is substantially outweighed by unfair prejudice. *Swajian v. General Motors Corp.,* 916 F.2d 31, 34 (1st Cir.1990)(*citing* 22 Wʀɪɢʜᴛ & Gʀᴀʜᴀᴍ, Fᴇᴅᴇʀᴀʟ Pʀᴀᴄᴛɪᴄᴇ ᴀɴᴅ Pʀᴏᴄᴇᴅᴜʀᴇ, §§ 5214, 5221). That is, a court may only exercise discretion to exclude evidence if the probative value is "substantially outweighed by unfair prejudice." *Id.* And a district court's discretion in the Rule 403 balancing inquiry is broad. *United States v. Scott,* 270 F.3d 30,51 (1st Cir.2001); *see also United States v. Griffin,* 818 F.2d 97, 101 (1st Cir.1987)("the district courts have considerable discretion in calibrating the Rule 403 scales"). This is so because "**Rule 403 balancing is a quintessentially fact-sensitive enterprise** and the trial judge is in the best position to make such **fact-bound assessments.**" *Udemba v. Nicoli,* 237 F.3d 8, 15 (1st Cir.2001)(emphasis added).

It is important to note at this stage that, while an argument may be made as to the fact that this case raises a possible confrontation between the Defendant's rights under the Sixth Amendment of the Constitution and the concerns contained in Fᴇᴅ.R.Eᴠɪᴅ. 403, nevertheless, no such confrontation exists because the competing concerns contained in the Sixth Amendment "are many of the same concerns contained in [Rule] 403 granting the trial court discretion to exclude evidence that is prejudicial, misleading, confusing, or wasteful." *Walker,* 930 F.2d at 792. However, "that is not to say that a proper Rule 403 ruling will subsume the constitutional issue, but it does identify the types of competing interests a court may consider in determining the proper constitutional limits to a defendant's Sixth Amendment right[s] . . . ." *Id.*

Thus, the discretion afforded to trial courts under Rule 403, vis-a-vis the interests of a Defendant under the Sixth Amendment, serves, not competing interests, but compatible interests.

However, the Court is also mindful that "discretion does not mean immunity from accountability." *United States v. Dwyer,* 539 F.2d 924, 928 (2nd Cir.1976). Moreover, "[s]ince the trial judge is granted such a powerful tool by Rule 403, he must take special care to use it sparingly." 1 J. Wᴇɪɴsᴛᴇɪɴ ᴀɴᴅ M. Bᴇʀɢᴇʀ, Wᴇɪɴᴛᴇɪɴ's Eᴠɪᴅᴇɴᴄᴇ ¶ 403[01], at 403–7 (1982). And although the First Circuit does not always require explicit findings on a Rule 403 decision, *see Rubert–Torres v. Hospital San Pablo, Inc.,* 205 F.3d 472, 479 (1st Cir.2000), this Court is additionally cognizant that it is always extremely useful and practical to make such fact-bound assessments, particularly here where the Defendant's Sixth Amendment rights are directly concerned. Accordingly, the Court shall execute the Rule 403 analysis *seriatim.* The Court finds that, in allowing Munoz–Franco to subpoena Honorable Judge Perez–Gimenez to testify on his behalf as a character witness, **in this case,** would constitute "unfair" prejudice, it may mislead the jury to decide on irrelevant factors, and would be needless presentation of cumulative evidence, in light of the list of proposed character witnesses Munoz–Franco has proffered.

### 1. Interjection of Unfair Prejudice and Misleading the Jury[1]

"Unfair prejudice," within the context of Rule 403, means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *United States v. Jamil,* 707 F.2d 638, 644 (2nd Cir.1983)(*citing Notes*

---

**1.** Due to these closely related 403 factors, the Court shall discuss them conjunctively.

*of Advisory Committee on Proposed Rules, Rule 403* ). Further, absent a significant showing of unfair prejudice, "evidence with substantial probative value should not be excluded." *Id.*

■ In the instant case, the Court finds that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Allowing Munoz–Franco to use Honorable Judge Perez–Gimenez to testify on his behalf, as a character witness leads to "danger of unfair prejudice." The Court explains. It is undisputed that Munoz–Franco and Judge Perez–Gimenez have been friends and neighbors. The proffer by counsel for Defendants, which the Court accepts, is that they were classmates in law school, they were both active members of the Law Review, and graduated at the same time. Additionally, they are active members of the same church where they regularly attend mass and share community religious matters. They have met on innumerable times at social gatherings throughout their lives and are both recognized members of the Puerto Rican community. Counsel for Defendants also proffer that Judge Perez–Gimenez attended the wedding of one of Munoz–Franco's siblings, after the indictment. The Government does not, nor can it, contest Judge Perez–Gimenez' relationship to the Munoz–Franco family. The Government does, however, contest the **unfairly prejudicial nature** of Judge Perez–Gimenez' proffered character testimony for other legitimate reasons.

There is no question that the Honorable Judge Perez–Gimenez has not presided over the trial in this case. Thus, he is not, **in principle,** precluded from testifying as a character witness in favor of Munoz–Franco, pursuant to his Sixth Amendment right. Again, the Court harbors not doubt

that Judge Perez–Gimenez' testimony regarding Munoz–Franco's character will benefit the Defendant, and prejudice the Government's case, at least in principle. But the question is not merely whether Munoz–Franco's Sixth Amendment right to call Judge Perez–Gimenez will benefit him and as a result prejudice the Government. *See Onujiogu v. United States,* 817 F.2d 3, 6 (1st Cir.1987)("The question is one of 'unfair' prejudice—not of prejudice alone"). Instead the inquiry is whether, under the particular circumstances, it will be **unfairly** prejudicial to the Government. The Court finds that, in light of the particular circumstances surrounding **this** particular testimony, by **this** particular Judge, there will be unfair prejudice to the Government in allowing Judge Perez–Gimenez to testify as a character witness in **this** case.[2]

There are potent reasons which guide the Court to the conclusion that Judge Perez–Gimenez' testimony will unfairly prejudice the Government, that is, that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Cognizant that the Rule 403–analysis is fact-intensive, the Court will underscore several facts that point to unfair prejudice in the context of this trial.

The District of Puerto Rico is not one of the larger federal districts. Indeed, there are only seven Federal District Court Judges serving actively on the bench, all of which, due to cultural, political and historical reasons, receive a fair amount of yearly publicity. Thus, it is not uncommon for a jury in this District to become somewhat acquainted with the Judges serving on this bench. This is particularly true in this case where the trial has lasted in excess of fifteen (15) months, and still continues to-

---

**2.** The ethical considerations potentially barring the appearance of the Judge claimed by

the Government in its motion are discussed *infra.*

day. The Court cannot ignore that Judge Perez–Gimenez' chambers and courtroom is immediately adjacent to this Judge's chambers and courtroom. In fact, jury selection in this case, which lasted more than two (2) weeks, was on several occasions held precisely in Judge Perez–Gimenez' courtroom. The entrance to his courtroom, as all other courtrooms in this District, prominently bears his name in reasonably-sized letters. And every morning that the jury is requested to appear, during the past fifteen (15) months, the jury has entered the courthouse for trial and has necessarily walked directly in front of Perez Giminez' courtroom. Moreover, Judge Perez–Gimenez sometimes begins trial at an earlier time than the undersigning judge, and thus when he is presiding, it is inevitable that the jury cross view with Judge Perez–Gimenez, and watch him presiding over his cases dressed in judicial attire.

Similarly, when the jury exits the jury room every afternoon, they necessarily walk in the hallway that leads them directly in front of the entrance to Perez–Gimenez' **chambers.** This also happens from time to time when the jury walks through that hallway at lunchtime (noon) when they have lunch together in a restaurant. It is reasonable to suggest that they have even crossed paths with Judge Perez–Gimenez more than once in that hallway, on their way out of the Courthouse, or on their way to lunch.

As stated above, the jury selection in this case, which lasted more than two (2) weeks, was on several occasions held precisely in Judge Perez–Gimenez' courtroom. However, it is also important to note that **trial itself** in the instant case has been held in his courtroom also. But there is more.

Honorable Judge Perez–Gimenez was at one time the Chief Judge of this District, and he held that position for many years. Furthermore, he is the Judge currently in charge of matters related to juries in this District, and is the empaneling judge for the Grand Juries in this district. Therefore, even though these particular facts stated above, standing alone, may not sufficiently show unfair prejudice, his testimony must not be allowed. After careful consideration, the Court is convinced that, viewing all factors **together,** in the context of this fifteen-month old trial, it is undeniable that the probative value of his testimony is substantially outweighed by the danger of unfair prejudice.

The Court is deeply concerned that this jury, under the specific surrounding circumstances of this case, will be mislead by the prestige of Perez–Gimenez' judicial office and the significance of his judicial robe, which the jury in this case is closely acquainted with. The jury could potentially weigh Judge Perez–Gimenez' testimony on an improper basis, which cannot be denied. The testimony of the judge will surely be unfairly enhanced by his judicial robe. This is precisely the type of situation that Rule 403 seeks to prevent. Therefore, the Court finds that based on the particular circumstances surrounding this case, allowing the testimony of the Honorable Judge Perez–Gimenez, as a character witness, would be "unfairly prejudice" to the Government.

Furthermore, although Munoz–Franco denies that the intentions are to create unfair prejudice, the initial reaction of counsel to waive all other character witness if Judge Perez Gimenez was authorized, raises the specter attempted to be avoided—that is, of the probative value of his proposed testimony being substantially outweighed by the danger of unfair prejudice, by Judge Perez–Gimenez' credibility being enhanced by the prestige and the power of the judicial office. However, the

prejudice is also compounded by the cumulative effect of the testimony considering the other character witnesses present in the list, which the Court sought to examine prior to deciding this matter. The Court explains.

### 2. Cumulative Nature

■ On the other hand, the Court also finds that there is **nothing** that prevents Munoz–Franco from relying on the character testimony of other judicial officers which will not unfairly prejudice the Government. As stated above, Munoz–Franco has availed himself of several potential character witnesses, all which are presumably close friends and acquaintances. Judge Perez–Gimenez **is merely one** of many which could speak favorably to the character of Munoz–Franco. However, in order not to reveal Defendants' trial strategy, the Court shall not reveal the names of those potential character witnesses that have been revealed to the Court. Notwithstanding, the Court is not precluded from underscoring, at this time, that the list includes a former state judge, prominent lawyers, well-respected public figures, bankers, and religious clergy.

Lastly, the Court must underscore the following. As stated above, when the Court announced its intention to follow the procedure followed by the Fifth Circuit Court in *Sullivan* (which stands for the proposition that other non-judicial testimony is examined first and then the Court decides if the judicial testimony is necessary), Counsel for Defendant immediately advised the Court that, under those circumstances, he would renounce all other potential witnesses, and subpoena **only** Judge Perez–Gimenez on behalf of his

client. Counsel for the Defendants implicitly recognized that, should the Court follow the *Sullivan's* Court approach, the testimony of Judge Perez–Gimenez would become cumulative since already there was on the record the testimony of one lawyer who knew the co-defendant for more than twenty-five (25) years, attesting to Munoz–Franco's excellent reputation, other lawyers could follow, a state judge could also testify, religious clergy likewise could take the stand (testifying as to the defendant's strong religious reputation). Moreover, prominent local public figures and bankers could provide potential character witness testimony that are beyond the realm of the scope of Judge Perez–Gimenez testimony who lacks commercial/industrial operational banking knowledge or any Commonwealth of Puerto Rico executive experience.[3]

Therefore, it is clear that allowing Judge Perez–Gimenez to testify after exhausting prior thereto the other character witnesses, as mandated under the *Sullivan* case, would constitute a presentation of cumulative evidence, under Rule 403. As such, the Court considers necessary to use its discretion and exclude Perez–Gimenez as a character witness. *United States v. Sullivan*, 803 F.2d at 89–90. Other potential witnesses currently available, undoubtedly, will serve as useful and beneficial witnesses to build-up the character of Munoz–Franco.

The Court further finds—regarding the ethical considerations raised by the Government that as in the case in the State of Indiana, the Commission of Judicial Qualifications, considering the testimony of other available potential character testimony divulged to the Court by counsel for Mu-

---

**3.** Judge Perez–Gimenez was in private practice (litigation) for three (3) years, then became a federal prosecutor, later a Magistrate Judge and then a District Judge. Thus, he lacks banking expertise and or Commonwealth public executive experience to testify as to the reputation of Munoz–Franco reputation in these fields.

noz–Franco at side bar, the testimony of Judge Perez–Gimenez as a character witness does not constitute "an unusual circumstance which demands of Justice require [testimony]" as to the character of Munoz–Franco, because other witnesses present in the witness list may provide the same character testimony as that to be provided by Judge Perez–Gimenez. Hence, the Commentary to Rule 2 B is applicable:

> A Judge must not testify voluntarily as a character witness because to do so may lend the prestige of the Judicial Office in Support of the party for whom the Judge testifies ... **Except in unusual circumstances where the demands of justice require, a Judge should discourage a party from requiring the Judge to testify as a character witness.** (Emphasis added.) 42 MAR RES GESTAE 3–98.

Since the Court has determined to exclude Judge Perez–Gimenez as a potential character witness **in this case,** for the reasons stated above, Munoz–Franco is to be allowed to present any and all character witnesses, save Judge Perez–Gimenez, he so deems necessary within the boundaries of the law. The Court is convinced that this would certainly cure any potential claim to a violation of Munoz–Franco's Sixth Amendment claims. *See Hamling v. United States,* 418 U.S. 87, 124–25, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974)(any potential prejudice to the defendant by the order of the court excising two witnesses was "cured" by the Judge allowing four witnesses to testify as to the same scope).[4]

### III

In conclusion, this case has been on trial for over fifteen (15) months and counting.

The Court, cognizant of the nature of the crimes charged in this case, has at all times been extremely concerned with safeguarding the Defendants' constitutional rights. The issue raised at this moment has not been the exception.

**WHEREFORE,** after balancing the 403 scales, and considering the applicable factual scenario of this case, the Court determines that the proffered testimony of Honorable Judge Perez–Gimenez, the probative value of his testimony is outweighed by the danger of unfair prejudice, misleading the jury, and also will constitute a needless presentation of cumulative character evidence. Hence, pursuant to FED. R.EVID. 403, the Court sustains the Government's objection to Munoz–Franco calling the Honorable Judge Perez–Gimenez, as a character witness. Docket No. 1239 is **GRANTED;** Docket No. 1241 is **DENIED.**

**IT IS SO ORDERED.**

---

4. This case is clearly distinguishable from the case of *United States v. Davis,* 639 F.2d 239 (5th Cir.1981), where the Court eliminated the only two character witnesses that the defendant proposed as to the poor character reputation of a key governmental witness.